UNITED STATES v. BISHOP.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1903.)

No. 1,877.

1. TRIAL—PEREMPTORY INSTRUCTIONS—REQUEST OF BOTH PARTIES—QUESTIONS OF FACT CONCLUDED.

Where, at the close of a trial by a jury, each party requests a peremptory instruction in his favor, and the court grants one of the requests, the parties are estopped from claiming that any question should have been submitted to the jury. All disputed questions of fact are conclusively determined in favor of the successful party, and the only questions open to review in the appellate court are, was there any substantial evidence in support of the court's finding of fact? and was there any error in the declaration or application of the law?

2. CUSTOMS DUTIES—CONSIGNEE OF GOODS OWNER FOR PURPOSES OF COLLECTION —RELATION TO CONSIGNOR IMMATERIAL.

The consignee of imported goods is deemed the owner for the purpose of the collection of the duties thereon, under section 3058, Rev. St., as amended by Act Feb. 23, 1887, c. 221, 24 Stat. 415 [U. S. Comp. St. 1901, p. 2005], and it is no defense to an action against the consignee for such duties that the consignor or any other party who, at the request or with the consent of the consignee, procured the importation, failed to obey the latter's instructions or to comply with the terms of the contract between them.

3. SAME—FORFEITURE FOR UNDERVALUATION—FRAUDULENT INTENT REQUISITE.

Under section 32 of the tariff law of July 24, 1897, c. 11, 30 Stat. 212 [U. S. Comp. St. 1901, p. 1892], the fraudulent intent of the owner or of his authorized agent in entering the imported merchandise is an indispensable condition of the right of the government to forfeit the goods for undervaluation.

4. SAME—ADDITIONAL DUTIES FOR UNDERVALUATION RECOVERABLE WITHOUT PROOF OF FRAUDULENT INTENT.

But an action to recover the additional duties accruing upon an undervaluation under this section of the law may be maintained against the consignee without proof of any fraudulent intent by the owner, the consignee, or the agent in making the entry. Good faith and innocence constitute no defense to such an action.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

Charles C. Houpt, for the United States.

Francis B. Hart, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. This is an action by the United States to recover of James H. Bishop, a citizen of the state of Minnesota, the duty upon a car load of calcium carbide, under section 7, c. 407, of the "Act to simplify the laws in relation to the collection of the revenues," approved June 10, 1890, 26 Stat. 134, as amended by the "Act to provide revenue for the government and to encourage the industries of the United States," approved July 24, 1897, c. 11, § 32, 30 Stat. 212 [U. S. Comp. St. 1901, p. 1892]. Section 32 of the tariff

¶ 3. See Customs Duties, vol. 15, Cent. Dig. § 297.

law of 189⁻ provides that section 7 of the act of June 10, 1890, c. 407, 26 Stat. 134, shall be amended so as to read as follows:

"Sec. 7. That the owner, consignee, or agent of any imported merchandise which has been actually purchased may, at the time when he shall make and verify his written entry of such merchandise, but not afterwards, make such addition in the entry to the cost or value given in the invoice or pro forma invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; but no such addition shall be made upon entry to the invoice value of any imported merchandise obtained otherwise than by actual purchase; and the collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or whole-sale price of such merchandise to be appraised; and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected and paid, in addition to the duties imposed by law on such merchandise, an additional duty of one per centum of the total appraised value thereof for each one per centum that such appraised value exceeds the value declared in the entry, but the additional duties shall only apply to the particular article or articles in each invoice that are so undervalued, and shall be limited to fifty per centum of the appraised value of such article or articles. Such additional duties shall not be construed to be penal, and shall not be remitted, nor payment thereof in any way avoided, except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback: provided, that if the appraised value of any merchandise shall exceed the value declared in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles in each invoice which are undervalued."

The title 34 of the Revised Statutes is entitled "Collection of Duties upon Imports." Section 3058 of chapter 10 of that title as amended by the act of February 23, 1887, c. 221, 24 Stat. 415 [U. S. Comp. St. 1901, p. 2005], provides that "all merchandise · imported into the United States shall, for the purpose of this title, be deemed and held to be the property of the person to whom the merchandise may be consigned."

In the action before us the United States alleged in its complaint, and the defendant, Bishop, denied in his answer, that the latter imported from St. Catharines, in the province of Canada, into the United States, 300 iron drums or cans, 50 wooden cases, and 32,400 pounds of calcium carbide; that the defendant's agent, Henderson, declared the foreign value of these goods to be $326; that the foreign value was $1,106; that the goods were properly appraised; and that the duty on them, under section 32 of the tariff law of July 24, 1897, c. 11, 30 Stat. 212 [U. S. Comp. St. 1901, p. 1892], which has been quoted

above, amounted to $829.50. Upon these issues the case was tried to a jury, and at the close of the evidence the government requested the court to give to the jury a peremptory instruction to return a verdict in its favor, and the defendant besought the court to peremptorily direct the jury that the plaintiff was not entitled to recover. Thereupon the court instructed the jury to return a verdict for the defendant, and the judgment upon that verdict is challenged by the writ of error in hand.

The requests of both the parties to this action for peremptory instructions in their favor relieve us from the consideration of the question whether or not there was any issue of fact which should have been submitted to the jury, and make the instruction of the court a conclusive finding in favor of the defendant on every question of fact at issue in the case. Where each party requests the court to direct the jury to find a verdict in his favor, he thereby concedes that the case presents no question for the jury, waives his right to their decision of every issue therein, and requests the court to find the facts and declare the law. And when, pursuant to such requests, the court accepts these waivers, and by its peremptory instruction determines the questions of fact and of law in favor of one of the parties, both parties are estopped from assailing or reviewing its finding upon disputed issues of fact, and are limited in the appellate court to a review of the two questions, was there any substantial evidence to sustain the court's finding of facts? and was there any error in its declaration or application of the law? Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; The City of New York, 147 U. S. 72, 77, 13 Sup. Ct. 211, 37 L. Ed. 84; Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525; King v. Smith, 110 Fed. 95, 97, 49 C. C. A. 46, 48, 54 L. R. A. 708; The Francis Wright, 105 U. S. 381, 26 L. Ed. 1100; Merwin v. Magone, 70 Fed. 776, 777, 17 C. C. A. 361, 362; Magone v. Origet, 70 Fed. 778, 781, 17 C. C. A. 363, 366; Chrystie v. Foster, 61 Fed. 551, 9 C. C. A. 606; Stanford v. McGill (N. D.) 72 N. W. 938, 952; Mayer v. Dean, 115 N. Y. 550, 22 N. E. 261, 5 L. R. A. 540; Provost v. McEncroe, 102 N. Y. 650, 5 N. E. 795.

In this state of the case the first question for consideration is whether or not there was any evidence to support a finding in favor of the defendant upon the issues of fact presented by the pleadings. The act of 1887, 24 Stat. 415 [U. S. Comp. St. 1901, p. 2005], declares that for the purpose of the collection of duties all merchandise imported into the United States shall be deemed to be the property of the person to whom it is consigned, and the act of July 24, 1897, c. 11, § 32, 30 Stat. 212 [U. S. Comp. St. 1901, p. 1892], provides that the owner, consignee, or agent shall pay the duties specified. In view of these provisions of the acts of Congress, there were but two material issues of fact presented by the pleadings in this case, and these were (1) whether or not the defendant, Bishop, was the party to whom the calcium carbide was consigned; and (2) whether or not this calcium carbide was so undervalued that the $829.50 claimed in the complaint was legally chargeable upon it as duties owing to the United States. The testimony upon the second issue was uncontra-

dicted. It was that one Henderson was the cashier of the Michigan Central Railway Company, over whose road the goods in question were directed to be shipped to the defendant; that one of the duties of his office was to enter such goods in the office of the collector of customs at Niagara Falls, and to make the necessary declaration as agent for the consignee; that he had acted as agent for the defendant, Bishop, for this purpose in one or two instances before, when the defendant had been the consignee of merchandise imported from St. Catharines; that he received the bill of lading and inventory of these goods, presented them to the collector of customs, made a declaration as the agent of Bishop, and entered them at the value of $326, while their actual value was $1,106; and that the duties which became due upon them under the provisions of the acts of Congress which have been quoted amounted to $829.50. This evidence disposed of the second issue, and left nothing there for the determination of either court or jury.

Upon the first issue Bishop testified that he did not order the goods described in the complaint which were imported at Niagara Falls on April 28, 1900, to be shipped to the United States, that he did not make a contract to purchase them, that Henderson was not his agent, and that he had no authority to act for him. But Bishop in other parts of his testimony conceded, and the writings in evidence proved, these facts: On April 10, 1900, the defendant sent to one Groves, in St. Catharines, an order to ship him, duty paid, the car load of calcium carbide described in the complaint in this action, and inclosed him funds to pay for it. Pursuant to this order Groves consigned this merchandise to Bishop, at Minneapolis, in the state of Minnesota, and shipped it by way of the Michigan Central Railway. He consigned it to Bishop by reason of the latter's order of June 10, 1900. In the bill of lading and the inventory he described it as 30,000 pounds of coke and lime refuse, and 2,000 pounds of calcium carbide, when the entire car load was composed of calcium carbide. It was this description in the bill of lading and this invoice that misled Henderson at Niagara Falls, caused the entry of the merchandise at the undervalution, and the liability for the duties which the government seeks to recover in this action. There is no other evidence nor is there any other fact in this case material to its determination. The evidence which has been recited is conclusive to the effect that Bishop was the consignee of the goods and that he became such by reason of his order to Groves to ship them to him at Minneapolis. The fact that he was the consignee clearly appears from the writings, and there is no evidence or testimony which tends to deny it. The statute declares that for the purpose of collecting the duties the consignee shall be deemed the owner of the goods imported, and there seems to be no escape from the conclusion that the defendant, Bishop, was liable for these duties.

Counsel for the defendant contends, however, that notwithstanding the fact that Bishop was the consignee, and notwithstanding the provision of the act of Congress that the consignee shall be deemed the owner for the purpose of the collection of the duties, the defendant is not liable in this case, because (1) he was not in fact the owner of the goods when they were imported, and (2) because he

was innocent of any intention to violate the law. In support of his position that the defendant was not the owner of the property at the time of its importation, he calls attention to the fact that one of the terms of his purchase from Groves was that the latter should pay the duty, and that inasmuch as Groves failed to do so the defendant was not obliged to accept and had not accepted the property when it was imported so that the title to it was then in the vendor. There are two answers to this contention. In the first place, whether Groves or Bishop was the owner of the goods when they were imported, as between themselves, is not material in this action, because under the act of Congress the consignee was the owner as between the United States and the consignee, and the defendant was the consignee. It may be and doubtless is true that a stranger cannot by consigning goods to any one who has not in any way authorized or induced him to do so charge such a consignee, even in favor of the United States, with liability for the duties upon the importation. But where the consignment is made, as in this case, at the request or with the consent of the consignee, the latter cannot escape liability to the government for the accruing duties because the consignor has failed to comply with some of his instructions or to perform some of the terms of a contract that may exist between them. The very purpose of section 3058 of the Revised Statutes [U. S. Comp. St. 1901, p. 2005] which declares that the consignee shall be deemed the owner for the purpose of collecting the duties was to relieve the government and the courts in proceedings of this nature from investigating and determining the rights of the respective claimants to the title and ownership of the property as between themselves, and this is its undoubted legal effect. The government in its attempt to collect the duties is interested in the importation only. So far as the importation alone is concerned, Groves, in St. Catharines, was the agent of Bishop, in Minneapolis, who directed him to ship the goods to the United States. The moving cause of the shipment was the order of Bishop to send him the goods. It was this order that induced the action of Groves, and the shipment of the goods to this country, and the other relations of the consignor and the consignee, became unimportant in this proceeding under the statute which has been recited. The consignee of imported goods is deemed the owner under section 3058 of the Revised Statutes as amended by Act Feb. 23, 1887, c. 221, 24 Stat. 415 [U. S. Comp. St. 1901, p. 2005], for the purpose of the collection of duties; and it is no defense to an action for their collection against the consignee that the consignor, or any other party who, at the request or with the consent of the consignee, procured the importation, failed to obey the latter's instructions or to comply with the terms of the contract between them. In the second place, it is by no means clear that Bishop was not the owner of the goods as between himself and Groves at the time of the importation, notwithstanding the fact that the latter had failed to pay the duty. He had shipped the merchandise pursuant to the order of Bishop, and had forwarded the bill of lading by which the goods were consigned to the defendants so that Groves had parted with their possession and their control. Concede that Bishop had

the right to refuse to accept the goods and to renounce the purchase. He had an equal right to accept them, to pay the duty himself, and to recover it from his vendor under his contract. There is a letter in this record written by Bishop after the goods had been seized by the government which strongly indicates that he was inclined to the latter course if he had not actually adopted it. Meanwhile, and until he did renounce the purchase, the possession, control, and title of the property appear to have been in him as against his vendor. The latter could not have recovered them if the defendant had insisted upon holding them.

In support of his second position, that the United States cannot collect the duties of this consignee because neither he nor his agent had any intention to defraud the government, counsel cite U. S. v. 208 Bags of Kainit (D. C.) 37 Fed. 326; 581 Diamonds v. U. S., 119 Fed. 556, 56 C. C. A. 122, 60 L. R. A. 595.; and quote from the opinion in the Cargo ex Lady Essex (D. C.) 39 Fed. 765, this sentence: "A forfeiture of goods for a violation of the revenue laws will not be imposed unless the owner or his agent has been guilty of an infraction of such laws."

There is, however, a marked distinction between proceedings to condemn for undervaluation and to forfeit imported goods and actions to collect the duties upon them which fall due by virtue of the undervaluation. The line of demarcation between them is clearly drawn in section 32 of the tariff law of July 24, 1897, c. 11, 30 Stat. 212 [U. S. Comp. St. 1901, p. 1892], and has been carefully observed in the decisions of the courts. The first proviso in that section clearly indicates that a fraudulent intent is indispensable to the maintenance of the action to forfeit the goods. It declares that if the appraised value shall exceed the value declared in the entry by more than 50 per cent., except when arising from a manifest clerical error, the entry shall be deemed to be presumptively fraudulent, that the collector shall seize the merchandise, and that in any legal proceeding resulting from such seizure the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the goods shall be adjudged forfeited unless the claimant shall rebut the presumption of fraudulent intent by sufficient evidence. There is no such provision in the section regarding fraudulent intent in the proceedings for the collection of the additional duties which it imposes. The undervaluation is the sole condition of their accrual and collection. Upon this subject the section provides that if the appraised value of the imported merchandise exceeds the value disclosed in the entry the additional duties shall be levied, collected, and paid, that these duties shall not be construed as penal, and shall not be remitted, nor shall payment thereof in any way be avoided, except in cases arising from a manifest clerical error, nor shall they be refunded, nor shall they be subject to drawback. Neither the guilt nor the innocence nor the intent of the owner or of his agent forms any condition or element of the action to collect these duties. The importation of the merchandise and the undervaluation are the only essential facts which condition the right of the government to recover the duties from the consignee under this section of the statute. The conclusion is irresistible

that under section 32 of the tariff law of July 24, 1897, c. 11, 30 Stat. 212 [U. S. Comp. St. 1901, p. 1892], the fraudulent intent of the owner or of his agent in entering the imported merchandise is an indispensable condition of the right of the government to forfeit the goods for undervaluation.   581 Diamonds v. U. S., 119 Fed. 556, 564, 56 C. C. A. 122, 60 L. R. A. 595; Origet v. U. S., 125 U. S. 240, 8 Sup. Ct. 846, 31 L. Ed. 743; U. S. v. 1,150½ Pounds of Celluloid, 82 Fed. 627, 27 C. C. A. 231; U. S. v. 208 Bags of Kainit (D. C.) 37 Fed. 326; The Cargo ex Lady Essex (D. C.) 39 Fed. 365.

But an action to recover the additional duties accruing upon an undervaluation may be maintained against the consignee under this section, and under section 3058, Rev. St., as amended [U. S. Comp. St. 1901, p. 2005], in the absence of any fraudulent intent by the consignee, the owner, or the agent.   Good faith and innocence constitute no defense to such an action.   U. S. v. 1,621 Pounds of Fur Clippings, 106 Fed. 161, 162, 45 C. C. A. 263, 264; Gray v. U. S., 113 Fed. 213, 216, 51 C. C. A. 170.   This case falls under the latter rule.

There was no substantial evidence in support of a finding in favor of the defendant, and the judgment below must be reversed, and the case must be remanded to the court below for a new trial.   It is so ordered.