UNITED STATES v. VANDIVER.

(District Court, E. D. Pennsylvania. November 14, 1904.)

No. 1.

1. Customs Duties—Persons Liable for—Broker Making Declaration as Consignee.

A customhouse broker, who makes the sworn declaration for entry of goods, in which he declares himself the consignee, cannot thereafter deny that he is such as against the government, and becomes liable for the duties under the provision of section 1 of the customs administrative act of June 10, 1890, c. 407, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886], that "all merchandise imported into the United States shall for the purposes of this act be deemed and held to be the property of the person to whom the merchandise may be consigned," including additional duties imposed for undervaluation under section seven of such act as amended by section 32 of the tariff act of July 24, 1897, c. 11, 30 Stat. 211 [U. S. Comp. St. 1901, p. 1892].

Action to Recover Duties. On motion by defendant for judgment on point reserved notwithstanding the verdict.

J. Whitaker Thompson and John C. Swartley, for the United States.
S. Morris Waln, for defendant.

J. B. McPHERSON, District Judge. The question in this case arises upon the following facts: In June, 1903, Mrs. William G. Steel, of Mt. Airy, Philadelphia, bought of Salviati & Co., in Venice, five pieces of decorated glassware, for which she was to pay 800 lire when the goods should be delivered at her residence in this city. This price was to include packing and transportation charges and the duty imposed by the United States on such articles. The invoice made out by Salviati & Co., however, aggregated only 190 lire, or $37. The goods were shipped from Genoa to New York by the steamship Manilla, and from a certified extract from the steamship's bill of lading it appears that they were entered at the last-named port by the American Express Company. It does not appear whether or not the express company was formally named as the consignee—the evidence does not satisfactorily show who was thus named—but on July 17, J. J. Hughes, described as "attorney for American Express Co.," made application to enter the goods without a certified invoice, and declared under oath that they were "imported by the American Express Co.," and that the price of 190 lire was "the actual cost or the foreign market value of the merchandise." The entry was made on the same day, but was merely to obtain immediate transportation in bond over the Pennsylvania Railroad to the port of Philadelphia. The entry for that purpose is signed, "For J. L. Vandiver, The American Express Co., by [an illegible name], Attorney." Upon this paper is stamped, "Consigned to the Collector of Customs at Philadelphia, pursuant to Art. 24, Treasury Regulations, August 7, 1890." When the two cases reached Philadelphia, the defendant, who is a customhouse broker, and had been employed to look after the goods on their arrival, made the following sworn declaration:

"Declaration of Consignee, Importer or Agent.

"I, John L. Vandiver, do solemnly and truly declare that I am the consignee of the merchandise described in the annexed entry and invoice; that the invoice and bill of lading now presented by me to the Collector of Customs are the true and only invoice and bill of lading by me received of all the goods, wares and merchandise imported in the Manilla, whereof —————— is master, from Genoa, for account of any person whomsoever for whom I am authorized to enter the same; that the said invoice and bill of lading are in the state in which they were actually received by me, and that I do not know or believe in the existence of any other invoice or bill of lading of the said goods, wares and merchandise; · that the entry now delivered to the collector contains a just and true account of the said goods, wares and merchandise, according to the said invoice and bill of lading; that nothing has been on my part, nor to my knowledge on the part of any other person, concealed or suppressed, whereby the United States may be defrauded of any part of the duty lawfully due on the said goods, wares and merchandise; that the said invoice and the declaration therein are in all respects true, and were made by the person by whom the same purports to have been made; and that if at any time hereafter I discover any error in the said invoice, or in the account now rendered of the said goods, wares and merchandise, or receive any other invoice of the same, I will immediately make the same known to the collector of this district. And I do further solemnly and truly declare that to the best of my knowledge and belief Wm. G. Steel is the owner of the goods, wares and merchandise mentioned in the annexed entry; that the invoice now produced by me exhibits the actual cost at the time of exportation to the United States, in the principal markets of the country from whence imported, of the said goods, wares and merchandise, and includes and specifies the value of all cartons, cases, crates, boxes, sacks and coverings of any kind, and all other costs, charges and expenses incident to placing said goods, wares and merchandise in condition packed ready for shipment to the United States, and no other or different discount, bounty or drawback but such as has been actually allowed on the same."

On the entry accompanying this declaration, which was also signed by the defendant, the merchandise is said to be "imported by John L. Vandiver," and the duty is set down at $22.20. This sum was paid on July 21 by the defendant, but before the cases were delivered they were seized for undervaluation, and were duly appraised at $79.12. From this appraisement the defendant appealed on July 30, signing the following paper:

"Importer's Notice to Collector, Claiming Reappraisement.

"As I consider the appraisement made by the United States Appraisers too high on two cases of glassware imported by me, in the Manilla and R. R. from Genoa, I have to request that the same may be reappraised, pursuant to law, with as little delay as your convenience will permit, at Philadelphia."

On October 23 the general appraisers affirmed the appraised value, and duties were thereupon imposed as follows: Duty of 60 per cent. on $79, amounting to $47.40, and additional duties amounting to $38.60, under section 7 of the customs administrative act of June 10, 1890, c. 407, 26 Stat. 134, 1 Supp. Rev. St. p. 748, as amended by section 32 of the tariff act of July 24, 1897, c. 11, 30 Stat. 211 [U. S. Comp. St. 1901, p. 1892], making a total of $86, and leaving a balance of $63.80, for which the present suit is brought.

The defense is that a customhouse broker is not liable for duties upon merchandise toward which he renders such service only as a broker is ordinarily called upon to render, and that the suit should therefore have been brought against the ultimate owner. To this position I think

it is sufficient to reply that the defendant cannot be permitted to deny his sworn declaration, wherein he has distinctly and deliberately described himself as the consignee. Indeed, in the absence of evidence to the contrary, I think I should be justified in holding that this declaration was true, and that the goods had been formally consigned to the defendant. In either case, he is to be treated as the consignee, and the consequence follows that under section 1 of the customs administrative act (26 Stat. 131, 1 Supp. Rev. St. p. 744 [U. S. Comp. St. 1901, p. 1886]) he becomes liable as if he were the real owner. That section provides, inter alia, that "all merchandise imported into the United States shall, for the purpose of this act, be deemed and held to be the property of the person to whom the merchandise may be consigned." As was pertinently said by the Circuit Court of Appeals for the Second Circuit in Baldwin v. United States, 113 Fed. 217, 51 C. C. A. 174:

"The government is not called upon to hunt up any ultimate consignee when there is a primary consignee to whom the goods are sent, who himself presents the invoice, makes the entry, receives the bill of lading, and gets the goods, thus being himself their 'importer.'"

In my opinion, that case is in no essential particular different from the case at bar, and is therefore decisive of the present question. So, also, if I am right in supposing that the defendant's sworn declaration that he was the consignee prevents him from denying it now, the recent decision of United States v. Bishop, 125 Fed. 181, 60 C. C. A. 123, is also in point. If the liability of a customhouse broker, as such, to pay duties, is to be determined, it ought to be raised in a case where he confines himself to his agency, and does not assume another character. No doubt it is convenient for these brokers to make the necessary declarations themselves, instead of requiring their clients to make them, but, if they choose to take upon themselves a character to which they are not entitled, they may be called upon to bear some of its burdens—at least, so far as the government is concerned. Who should ultimately pay such a duty as is here involved—the broker or his principal—is not now in controversy.

Judgment may be entered for the government on the point reserved.