## UNITED STATES v. MEXICAN INTERNATIONAL R. CO.

### (Circuit Court of Appeals, Fifth Circuit. January 29, 1907.)

### No. 1,482.

**1. CUSTOMS DUTIES—RELIQUIDATION.**

Under Act June 22, 1874, c. 391, § 21, 18 Stat. 190 [U. S. Comp. St. 1901, p. 1986], which provides that the liquidation and payment of duties after the expiration of one year from the time of entry shall be final and conclusive on all parties, in the absence of fraud or protest by the owner, a collector may reliquidate an entry and assess increased duties at any time before the expiration of a year, although the duties first assessed have been paid and the goods withdrawn for consumption.

**2. SAME—CONCLUSIVENESS—FAILURE TO PROTEST.**

A reliquidation of duties by a collector, like an original liquidation, is conclusive on the owner or importer under Customs Administrative Act June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933], unless notice of objection is given within 10 days.

**3. SAME—LIABILITY FOR DUTIES—CONSIGNEE.**

Where a railroad company whose line extended across the boundary between Mexico and the United States, pursuant to authority of its directors, appointed two agents to receive and enter at a customs port of the United States all goods imported by or consigned to the company, and one of such agents made the declaration on a consular invoice of goods as agent of the railroad company, and the other as consignee made the entry, paid the duty with money of the company, and received the goods, the company may be held as importer or consignee for an additional duty assessed on a reliquidation, and it was error to direct a verdict for the company.

In Error to the District Court of the United States for the Western District of Texas.

This action was brought by the United States against the Mexican International Railroad Company, a corporation organized under the laws of Connecticut and operating a railroad in the republic of Mexico and in the state of Texas, to recover $3,876.60 alleged to be due for duties on the importation of merchandise.

The petition shows that when the goods were first imported they were so classified and valued that the duties amounted to only $51.20, which was paid by F. A. Bonnet with funds of the railroad company; that within 12 months there was a reliquidation, and the increased duties were assessed for which the suit was brought.

The answer of the defendant presented the defense (1) that the classification first made was correct, and that the duties as then assessed had been paid, and that the collector had no right, after such payment and the release of the goods, to make a reliquidation; and (2) that the railroad company was not the owner of the goods, and was not liable for the duties for which suit was brought.

The case was tried before a jury, and, after evidence had been offered by both parties, the court instructed the jury to return a verdict for the defendant company, and the United States sued out this writ of error, assigning that the trial court erred in directing the verdict.

A condensed statement of the facts as they appeared when the evidence was closed is necessary:

On June 10, 1901, the Mexican International Railroad Company duly constituted and appointed, by written power of attorney, Fritz A. Bonnet and J. N. Shafter its agents and attorneys, for it, and in its name, place, and stead, to receive and enter at the custom house at the port of Eagle Pass, in the collection district of Saluria, in the Western district of Texas, any and all goods, wares, and merchandise thereafter imported by, or which might thereafter arrive consigned to, the Mexican International Railroad Company. Bon-

151 F.—35

net and Shafter were further authorized by the power of attorney to sign the name of the Mexican International Railroad Company, to seal and deliver any bonds required for securing the payment of duties and other charges on any and all such goods, wares, and merchandise, and generally to transact at the custom house at the port of Eagle Pass any and all customs business in which the Mexican International Railroad Company might be concerned or interested.

On July 21, 1903, there was received at Gomez Palacios, Mexico, by the Mexican International Railroad Company, through its agent, George F. Jackson, for and to be delivered to F. A. Bonnet at Eagle Pass, Tex., a certain shipment, consisting, among other articles, of 19,636 pounds described in the bill of lading therefor as "waste."

On July 25, 1903, F. A. Bonnet signed a consular invoice for, among other things, the said 19,636 pounds of waste, wherein it was stated that the same was shipped by the Mexican International Railroad Company to the port of Eagle Pass, Tex., in railroad cars, and to be there entered at the custom house consigned to J. N. Shafter, which invoice described the 19,636 pounds of waste as "all waste," and as dutiable at 10 per cent. ad valorem, under paragraph 463 of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1679]).

Thereafter J. N. Shafter appeared before L. A. Martin, consul of the United States at Ciudad Porfirio Diaz, Mexico, and produced the invoice last before mentioned, signed by Bonnet before the said consul, and declared in writing in the presence of the consul that entry of the said merchandise was to be made at the port of Eagle Pass, Tex., in the United States of America; the consul further making the customary certificate as to the identification of Shafter and as to the actual market value and wholesale price of the goods described in said invoice in the principal markets of the country at the time of exportation.

At the same time and date, J. N. Shafter made the usual declaration on the invoice as follows:

"I, J. N. Shafter, customs agent of the Mexican International Railroad Company, do solemnly and truly declare that I am the agent of the merchandise in the within invoice mentioned and described: that the said invoice is in all respects correct and true, and was made at Ciudad Porfirio Diaz, whence said merchandise is to be exported to the United States; that said invoice contains a true and full statement of the time when, the place where, and the person from whom the same was purchased, and the actual cost thereof, and all charges thereon; that no discounts, bounties, or drawbacks are contained in said invoice, but such as has been actually allowed thereon; that no different invoice of the merchandise mentioned in said invoice has been or will be furnished to any one; and that the currency in which said invoice is made out is that which was actually paid for said merchandise. And I further declare that it is intended to make entry of said merchandise at the port of Eagle Pass, Texas, in the United States of America.

"J. N. Shafter.

"Ciudad Porfirio Diaz, Mexico, July 25, 1903."

Said consular invoice was indorsed on the back as follows:

"102 Duplicate. (Purchased.) No. 215. Invoice of Waste & Cotton. To be entered at Eagle Pass, Texas. Name of shipper: Mexican International Railroad Company.

"Total amount of invoice, $1,404.28. Fee No. ———."

On July 25, 1903, F. A. Bonnet made entry at the United States custom house at Eagle Pass, Tex., among other articles, of the said 19,636 pounds of waste, classifying the same as "all waste," dutiable at 10 per cent. ad valorem, the amount of duties thereon, as stated in said entry, being $51.20.

Thereafter, on the same day and as part of said entry and under oath, the said F. A. Bonnet made the usual declaration required by law for entries at the custom house, wherein he declared in substance that he was the consignee of the merchandise, to wit, the 19,636 pounds of waste described in the said entry and invoice, etc. He further declared that to the best of his knowledge and belief J. R. C. Boyer, of Philadelphia, Pa., was the owner of

the said merchandise, and that the invoice exhibited the market value at the time of exportation to the United States in the principal markets of the country from whence imported, etc.

On July 30, 1903, the said entry of the said 19,636 pounds of waste was, by the collector of customs at the port of Eagle Pass, liquidated as entered; that is to say, as of the dutiable value of $512, with a rate of duty of 10 per cent. ad valorem, and an amount of duty due the United States of $51.20, which amount of duty on said liquidation as entered, namely, $51.20, was paid by the said F. A. Bonnet to the collector of customs at the port of Eagle Pass.

On March 5, 1904, the collector of customs at the port of Eagle Pass reliquidated the said entry of the said 19,636 pounds of waste, classifying the same as "wool waste," under paragraph 362 of the tariff act of 1897, and assessed the duties on the said shipment at the specific duty of 20 cents per pound, making the duties due the United States $3,927.80, less that estimated and liquidated formerly of $51.20, leaving an increase in duties of $3,876.60, and called upon Mr. Shafter, the customs agent of the Mexican International Railroad Company, for payment of this increase.

Other evidence was offered relating to the manner of the importation in question, and as to the usual course of business as transacted between the railroad company's customs agents and the collector of customs, which will be referred to in the opinion.

Henry Terrell and Charles A. Boynton, U. S. Attys.

Thos. W. Dodd, R. H. Ward, and S. G. Newton, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

1. The original entry of the merchandise was made July 25, 1903, and the duties, amounting to $51.20, were paid by the Mexican International Railroad Company, acting by its customs agent, F. A. Bonnet. On March 5, 1904, within less than one year of the original entry, the collector reliquidated the entry and assessed the increased duties to the amount of $3,876.60. Section 21 of the act of June 22, 1874 (18 Stat. 190, c. 391 [U. S. Comp. St. 1901, p. 1986]), provides:

"Whenever any goods, wares, and merchandise shall have been entered and passed free of duty and whenever duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner, importer, agent or consignee, such entry and passage free of duty and such settlement of duties shall, *after the expiration of one year from the time of entry*, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties."

We have put in italics the phrase bearing directly on the point under discussion. Before "the expiration of one year from the time of entry" the settlement of duties is not conclusive on the government. Before the expiration of the one year the collector may reliquidate the assessment, although the duties first assessed have been paid and the goods withdrawn for consumption. Louisville Pillow Company v. U. S. (C. C. A.) 144 Fed. 386, 11 Treas. Dec. 509; Protests of Cassel, 146 Fed. 146, 9 Treas. Dec. 422; Beard v. Porter, 124 U. S. 437, 8 Sup. Ct. 556, 31 L. Ed. 492; Neresheimer v. U. S. (C. C.) 7 Treas. Dec. 3, 131 Fed. 877; Gandolfi v. U. S., 74 Fed. 549, 20 C. C. A. 652.

2. Under section 14 of the "Act to simplify the laws in relation to

the collection of revenues" (Act June 10, 1890, c. 407, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933]), the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise is final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within 10 days after the ascertainment and liquidation of duties, give notice in writing to the collector setting forth his objections. Upon such notice being given, the collector shall transmit the invoice and all papers connected therewith to the board of three general appraisers, which board shall examine and decide the case thus submitted. Act June 10, 1890, c. 407, 26 Stat. 131, 1 Supp. Rev. St. 751 [U. S. Comp. St. 1901, p. 1933]. In the case at bar, no notice of dissatisfaction having been filed within the time prescribed, the reliquidation is final and conclusive against all parties interested therein. Louisville Pillow Company v. U. S. (C. C. A.) 144 Fed. 386, 11 Treas. Dec. 509.

3. The United States contended on the trial that the Mexican International Railroad Company, on the facts proved, was the consignee within the meaning of the customs laws. If that contention is sustained, it would be liable for the duties assessed on reliquidation. There was in evidence a resolution of the board of directors of the railroad company providing for the appointment within the several collection districts of the United States of agents and attorneys, who shall have authority to receive and enter at the custom houses any and all goods hereafter imported by the company or which may hereafter arrive consigned to the company. There was in evidence, also, a power of attorney, executed by the railroad company, constituting J. N. Shafter and F. A. Bonnet their agents to receive and enter at the custom house at the port of Eagle Pass, Tex., all goods imported by or consigned to the railroad company, and generally to transact customs business of the railroad company at that port. The consular invoice in evidence contains the following caption:

"Invoice of Waste & Cotton Shipped by the Mexican International Railroad Company to the Port of Eagle Pass, Texas, in Railroad Cars, and to be There Entered at the Custom House, Consigned to J. N. Shafter.

"F. A. Bonnet."

The indorsement on the invoice shows that it was presented to the consul by J. N. Shafter. The declaration of the consular invoice is made by "J. N. Shafter, customs agent of the Mexican International Railroad Company." He declares that he is the "agent of the merchandise in the within invoice," and that it is intended "to make entry of said merchandise at the port of Eagle Pass, Texas, in the United States of America." The invoice is indorsed, showing that the "shipper" is the Mexican International Railroad Company.

The original bill of lading for the goods, which was presented at the custom house, together with the consular invoice at the time the entry was made, is made out on an official blank of the Mexican International Railroad Company, and shows, under the head of "Marks and Numbers," the following: "The consignee and destination: F. A. Bonnet, Eagle Pass." The original entry of the goods was made by

F. A. Bonnet, who made oath that he was the consignee of the merchandise offered for entry. The evidence tends to show that he was acting as the customs agent of the railroad company. The evidence of J. N. Shafter in the record shows that he was employed by the railroad company in 1903. He briefly describes the method of doing business by himself and the customs department in regard to shipments coming to the Mexican International Railroad Company. He testified that shipments usually come consigned to him (Shafter), and that the collector in accepting duties requires the signature of the servant of the employer who pays the duty. The merchandise "is shipped across the river to a local person at Eagle Pass. In this case the local person is Bonnet, who is chief clerk in my office, and that is done for the purpose of completing the records." The evidence shows that in this case the $51.20 of duties first assessed were paid by F. A. Bonnet, acting as the agent of the railroad company, with money furnished by the railroad company. The money so paid was charged on an expense bill, and presumably collected with the freight when the goods were withdrawn from the custom house, forwarded to Philadelphia, and there delivered to J. R. C. Boyer.

There appears to be some conflict in the written evidence offered. The United States offered a bill of lading of the goods in question, in which, under the head of "Marks and Numbers," is the following: "Consignee and destination: F. A. Bonnet, Eagle Pass." The defendant offered a "duplicate" bill of lading of the same date and for the same goods, on the back of which is the following indorsement: "Consignee and destination: J. R. C. Boyer, Philadelphia, Pa., via New Orleans and Morgan Line, a/c J. N. Shafter, Eagle Pass." Both bills of lading were in the Spanish language, but only translations into English appear in the bill of exception.

It is provided by the first section of the customs administrative act (Act June 10, 1890, c. 407, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886]) that:

"All merchandise imported into the United States shall for the purposes of this act be deemed and held to be the property of. the person to whom the merchandise may be consigned. * * *" 26 Stat. 131, 2 U. S. Comp. St. 1901, p. 2005.

Construing this statute in Baldwin v. U. S., 113 Fed. 217, 218, 51 C. C. A. 174, the court held that the government is not called on to hunt up any ultimate consignee when there is a primary consignee to whom the goods are sent, and who himself presents the invoice, makes the entry, receives the bill of lading, and gets the goods, thus being himself their importer. In the case at bar the evidence, to say the least, tends strongly to show that the Mexican International Railroad Company, through its authorized agent, was the consignee of the goods. F. A. Bonnet, acting, the evidence tends to show, as the agent of the railroad company, declared himself to be the consignee. It has been held that such declaration estops one from denying that he is the consignee when sued for the duties. U. S. v. Vandiver (D. C.) 133 Fed. 252, 9 Treas. Dec. 191.

It is held in U. S. v. Bishop, 125 Fed. 181, 60 C. C. A. 123, that the consignee of imported goods is deemed the owner for the purpose of the collection of the duties on the goods consigned.

In the various transactions relating to the importation of these goods, the evidence shows that Bonnet and Shafter were acting as the attorneys in fact of the railroad company. In some of their statements they described themselves as such agents, but in others they used only their individual names. But the evidence as to the course of business, as well as the evidence relating to the importation in question, shows that all parties concerned knew that both Shafter and Bonnet were acting for the railroad company. They were probably relieved of personal liability, being the agents of a disclosed principal. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050.

The facts were sufficient, we think, to sustain a verdict that the railroad company, acting through its agents, Shafter and Bonnet, was really the importer and consignee of the goods. It was error, therefore, to direct a verdict in favor of the railroad company.

The judgment of the District Court is reversed, and the cause remanded, with instructions to grant a new trial.