# PETER SCHOENHOFEN BREWING COMPANY
## *v.* MALTINE COMPANY.

### TRADEMARKS; UNFAIR COMPETITION.

1. A trademark serves a two-fold purpose,—to protect the owner from unfair competition, and the public from being deceived; and it is the design appearing upon the goods, and not the specifications filed in the Patent Office on which the trademark was registered, or is sought to be registered, that affects the public mind and protects the trade of the owner.

2. Where an applicant for registration of the word "Edelweiss-Maltine" as a trademark states in his application that the class of goods to which the mark is appropriated is fermented liquors, particularly lager beer; while the labels on the packages and bottles on which the mark is used, and the accompanying advertising matter, attribute to the product the

purely medicinal qualities of maltine, which is a product made and sold under that name by the party opposing the registration; and it appears that the applicant has used the mark under such false guise for a number of years,—the application for registration is properly denied.

3. The imitation of a trademark of a dealer, with partial additions, such as the public would not observe, does the same harm as an entire counterfeit; and registration of the imitation will be denied.

No. 448.   Submitted January 21, 1908.   Decided February 4, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents denying an application for registration of a trademark, opposition having been made thereto.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Thomas A. Banning* for appellant.

*Mr. Joseph R. Edson, Mr. Delbert H. Decker,* and *Messrs. Bassett, Thompson, & Gilpatric* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the Commissioner of Patents refusing an application for the registration of a trademark.

The appellant, the Peter Schoenhofen Brewing Company, on September 25, 1905, filed its application, serial No. 12,952, for the registration of a trademark or name consisting of the compound or hyphenated word "Edelweiss-Maltine" set in an elaborate picture or design, described in the application as follows: "The trademark consists in a transversely elongated right panel having a narrow centre and rounded ends, and having a gold border. Upon the panel appears in script letters the word "Edelweiss," and in block letters the word "Maltine" located somewhat below the word "Edelweiss." Above the right panel is a segmental gold-bordered blue panel having in its centre a medallion bust portrait of a woman with Edelweiss flowers in her hair, and around the portrait are vines, grain,

etc. Within the upper panel appear the words, "A superior extract of barley, malt, and imported hops." Below the right panel is a lower rounded panel having a yellow centre and a blue exterior with a gold border. Within the lower panel appear the words, Bottled only by the Malt Extract Dep't of The P. Schoenhofen Brewing Co., Chicago." This trademark has been continuously used by appellant since December 15, 1900.

The appellee on April 17, 1906, filed its opposition to the registration of this trademark, and assigned as a reason for such opposition that its use by appellant was "calculated to create confusion in the trade, and to interfere with the established trade." A large amount of evidence was taken in the case. It appears that three different certificates of registration on the trademark "Maltine" were obtained by the appellee and its predecessors between the years 1875 and 1905. It may be stated that the specification upon which the trademark "Maltine" was registered provided in general terms for its use on medical preparations containing malt extract. It is claimed by appellee that the word "Maltine" was originally coined and applied as a trademark to the product which is now widely known to the public by that name. The same person coined the word who discovered the product. Maltine has gained a wide use as a medicine and tonic, and is prescribed extensively by physicians, and sold generally by druggists. The record discloses an analysis of the respective products of the parties to this interference. The analysis is as follows:—

|  | Edelweiss Maltine | | Maltine Plain. | |
|---|---|---|---|---|
| Water | 88.04 | per cent. | 28.20 | per cent. |
| Alcohol | 4.42 | " | 0. | " |
| Maltose | 2.95 | " | 60.26 | " |
| Dextrine, etc. | 4.21 | " | 6.01 | " |
| Albuminoids | 0.395 | " | 3.63 | " |
| Acidity | 0.117 | " | 0.486 | " |
| Carbonic acid | 0.32 | " | 0. | " |
| Ashes | 0.418 | " | 1.45 | " |
| Diastase | 0. | " | Plain traces. | |

It will be observed that the products possess in varying percentages the same properties, except that maltine contains no alcohol or carbonic acid, but it does contain a plain trace of diastase, while Edelweiss-Maltine contains both alcohol and carbonic acid, but no diastase.

A trademark is registered for the purpose of enabling the owner to use it exclusively as a distinguishing name for a certain product, and thereby enable him to gain the advantages that follow such a distinct designation in extending and enlarging his business. The purpose of the trademark is to get before the public, in a unique and impressive manner, the goods on which the mark is used, and to distinguish such goods from all other goods on the market of the same class or description. It serves a two-fold purpose,—to protect the owner from unfair competition, and the public from being deceived. Being devoted to this two-fold use, it is important to keep in mind that it is the design appearing on the goods, and not the specifications filed in the Patent Office on which the trademark was registered, or is sought to be registered, that affects the public mind and protects the trade of the owner. It is the trademark, and not the specifications, that is exposed to public inspection. People generally are not interested in what the specifications contain. In the case at bar, while the applicant's specifications allege that "the class of merchandise to which the trademark is appropriated is fermented liquors, and the particular description of goods comprised in said class, upon which said mark is used, is lager beer," there is nothing on the face of the mark or design in which it is used, or on the packages or bottles to which it is applied, to indicate that they contain either fermented liquor or lager beer. The exhibits of the applicant's goods on which the mark "Edelweiss-Maltine" is used, which were introduced in evidence, show that labels are used thereon describing the contents as follows: "A superior extract of barley, malt, and imported hops, bottled only by the Malt Extract Dep't of The P. Schoenhofen Brewing Co., of Chicago." The bottles also bear a "caution" label, which states that "Edelweiss-Maltine is the highest concentration of the pure, health-

giving properties of selected malt and hops.  Edelweiss-Maltine will promote perfect and restful sleep, quiet the nerves, aid digestion, will restore and assist nature in the action of the stomach, liver, and kidneys, without any after effects.  Edelweiss-Maltine is an invaluable aid to men and women in convalescence, a boon to nursing mothers.  It is simply a perfect food for brain, body, and mind.  Drink a glass at meals and before retiring, and as a beverage it is good for you.  Keep in a cool dark place."  There was also introduced in evidence a blotter that had been issued by the appellant company, on which appeared the design described in the application in this case, except that on the blotter the word "Maltine" is by far the most prominent feature, the word "Edelweiss" being obscure and partially inclosed within an initial curve of the letter M of Maltine.  The product of appellant is described on the blotter as follows:  "A pleasing, tasteful, invigorating tonic, as well as a pleasant beverage, for strengthening and building up the system, recommended for convalescents and nursing mothers by all leading physicians.  12 bottles $1.  Prepared by the P. Schoenhofen Brewing Co., Malt Extract Dep't."

We are impressed with the discrepancy between the language used by appellant in its application, which describes a fermented alcoholic beverage, and the labels on the packages and bottles on which the trademark sought to be registered is used, and the blotter, which attribute to the product purely medicinal qualities.  In other words, it is apparent that appellant, in its application filed in the Patent Office, has described a product entirely different from that described upon its labels and advertising matter.  So far as the purchaser is concerned, the products of both contending parties are described as possessing substantially the same properties.  Both are advertised especially as tonics, and, so far as the public is advised, both belong to that general class of medicines.  The mere fact that appellant has used the mark "Edelweiss-Maltine" on its goods under this false guise since December 15, 1900, is sufficient ground for the refusal of registration.

Under these circumstances, the allowance of this trademark

would have the effect of permitting the appellant to place upon the market a product of the same general description as the product of appellee, and bearing upon the bottles and packages the same general description as to its qualities. Appellant could, under this subterfuge, sell its product in drugstores and places where medicines are usually sold, and in which the general sale of fermented liquors is prohibited, and would not be compelled to confine its sale to saloons and places where fermented liquors are generally sold under proper legal restrictions. This is the view taken by the tribunals of the Patent Office. Quoting from the opinion of the Examiner of Interferences: "It is clear from the testimony above considered that, while the product of the Maltine Company is a nonalcoholic viscous syrup, and 'Edelweiss-Maltine' a beer containing alcohol, and the packages in which these products are put up and sold are different, the significant fact remains that 'Edelweiss-Maltine' is placed upon the market in such form as to be capable of classification with other medicinal malt extracts, rather than with beers, and its labels, while silent as to the fact that it is beer, indicate that its chief claim to merit is a malt extract tonic. Furthermore, it is shown and not denied, that 'Edelweiss-Maltine' was exhibited to the members of the medical profession as a medicinal malt extract tonic, and not as a beverage, and is sold in some drugstores in competition with malt extracts. These facts warrant the conclusion that 'Edelweiss-Maltine' is intended to be, and is in fact, merchandise of the same descriptive properties as 'Maltine,' notwithstanding its designation as 'lager beer' in the application for registration."

The word "Maltine" is the name by which the goods of appellee are known in the trade and among consumers. It is insisted that appellant's goods are put up in different shaped bottles and sold much cheaper than the goods of appellee, but this is immaterial and does not affect the question here involved. The distinguishing feature of both marks is the word "Maltine," and the allowance of the mark sought to be registered by appellant would deceive the public and injure the trade of appellee. *Heublein* v. *Adams,* 125 Fed. 782. We are of the

opinion that the differences in the design of the trademark and the description contained on the labels of the bottles would not be such a distinction as the public would readily observe. Where this condition exists, registration should be refused. The rule is well announced in Paul on Trademarks, sec. 187: "An imitation of the trademark of a dealer with partial differences, such as the public would not observe, does him the same harm as an entire counterfeit, and will be enjoined accordingly. Where the trademark consists of a word, it may be used by the manufacturer who has appropriated it, in any style of print or on any form of label; and its use by another in any form is unlawful. In such case, as the goods become known by the name or word by which they have been designated, and not merely by the manner or fashion in which the word is written or printed or the accessories surrounding it, the unlawful use of the word in any form may be restrained."

The allowance of the registration of appellant's design as a trademark would create confusion in trade, and subject to unfair competition the business of appellee, which has been legitimately conducted and built up through a long period of time. It is unnecessary to consider the other questions discussed by counsel.

The decision of the Commissioner of Patents is affirmed, and the clerk will certify the proceedings as required by law.

*Affirmed.*