### EWERT v. FULLERTON.

(Circuit Court of Appeals, Eighth Circuit. August 30, 1915.)

#### No. 4353.

1. EJECTMENT ☞106—QUESTION FOR JURY—LEASE.

In ejectment, whether the assignee of a lease of land from an Indian had notice of a prior unrecorded lease *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 307–310; Dec. Dig. ☞106.]

2. EJECTMENT ☞109—DIRECTION OF VERDICT—POWER OF COURT.

Where both parties in ejectment moved for a directed verdict, it was not error to refuse both requests, since the court still retained the right to decide that the concession of both parties that the case presented no question for the jury was without foundation.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 312; Dec. Dig. ☞109.]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge

Action by Paul A. Ewert against S. C. Fullerton. Judgment for defendant, and plaintiff brings error. Affirmed.

Paul A. Ewert, of Joplin, Mo., pro se.
S. C. Fullerton, of Miami, Okl., pro se.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. This was ejectment. Ewert was plaintiff below and lost. The estates involved were all leaseholds, under which the conflicting claims to right of possession were asserted. There were two tracts, one owned by Ta-Mee-Heh Quapaw, an Indian woman, and the other by Ta-Mee (alias Newakis) Quapaw, her daughter. Fullerton got his leases first, but withheld them from public record until after the Indian women had given like leases to one Church, who was acting for Ewert, and to whom they were later assigned. In that condition, the rights of Fullerton under his leases were made subordinate to Ewert's right under his leases by the State Recording Act, unless the latter, when his leases were given, had actual notice of Fullerton's rights.

[1] Error is assigned, that the court refused to direct a verdict for plaintiff when both had rested. But there was substantial conflict in the evidence on the question of notice, which raised the only contested issue of fact submitted to the jury by appropriate instructions. Church's testimony tended to establish that when he took the leases for Ewert he did not have knowledge or notice of the prior unrecorded leases to Fullerton. As against this the testimony of Ta-Mee Quapaw, who was plaintiff's witness, tended strongly to establish the contrary. She acted both for herself and her mother in the negotiations with Church which resulted in the leases taken in his name for the plaintiff. She could understand, read, write and speak English; her mother could not. She testified, in part:

Q. Now when you were negotiating or he (Church) was negotiating for these leases, do you remember just what you said to him? A. Yes, sir.

Q. Didn't you say to him there are several leases outstanding on that property, or words to that effect?

A. I just told him about the old leases.

Q. What words did you use?

A. Well, I told him they were leased to Fullerton and I did not want to lease it out no more.

Q. You told him the land was leased to Fullerton?

A. Yes, sir.

Q. And you didn't want to lease it any more? A. Yes, sir.

Q. That is the language you used? A. Yes, sir.

Q. And was that all you said to Mr. Church about leases other leases on this land? A. Yes, sir.

Q. Did he enquire what leases to Fullerton or did he simply say that he knew about those or that he didn't care about that?

A. No, he said he was going to be partner with Fullerton.

Q. He said he was going to be a partner with Fullerton?

A. Yes, sir.

Q. That was the only reply he made? A. Yes, sir.

Q. Have you told the jury all you said to Mr. Church and all Mr. Church said to you about there being other leases?

A. Yes, sir.

The action of the court in refusing the request was not error.

[2] It is further argued that the court erred in not directing a verdict either for the plaintiff or the defendant, each of whom at the

close made such a request in his behalf; and in support Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, and Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559, are cited. No such error was claimed in the assignment; but we pass that requirement to say that we find nothing in the authorities cited or elsewhere in support of the contention. The court might have granted either request as dictated by its judgment at the time; but the requests did not put the court under compulsion to sustain either. The requests were concessions by each party that the case presented no question for the jury, and operated as a waiver by each of his right to have the jury pass on the issue; but such action by the parties did not take from the court the right to decide that the concession was without foundation, and thus reject the consequent attempted waiver of the province and duty of a jury. United States v. Bishop, 125 Fed. 181, 183, 60 C. C. A. 123; Empire State Cattle Co. v. Railway Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Id., 147 Fed. 457, 77 C. C. A. 601; Minahan v. Railroad Co., 138 Fed. 37, 70 C. C. A. 463; McCormick v. Bank, 142 Fed. 132, 73 C. C. A. 350, 6 Ann. Cas. 544; Sigua Iron Co. v. Greene, 88 Fed. 207, 31 C. C. A. 477. If both parties desired to impose the duty of determining both fact and law on the court, the statute expressly points out a way in which that can be easily done. U. S. Compiled Stat. 1913, § 1587; Beuttell v. Magone, supra.

We do not find that error was committed at the trial, and the judgment must be affirmed with costs.