## CHRYSTIE et al. v. FOSTER.

### (Circuit Court of Appeals, Second Circuit. May 10, 1894.)

### No. 108.

BANKS AND BANKING—INDIVIDUAL NOTE OF PRESIDENT.

C., in order to obtain a credit in his personal account with a bank of which he was the president, procured the defendants, a banking firm, to discount his individual note, credit the amount to the bank, and notify the bank that he had deposited the amount with them to the credit of the bank. The bank had previously given C. credit for the amount, and, after being notified by the defendants that the deposit had been actually made with them, allowed C. to overdraw his account. Thereafter, and while his account with the bank was overdrawn, C., in his official character as president, authorized the defendants to charge the note to the account of the bank, and the defendants did so. *Held*, in a suit by the receiver of the bank to recover the deposit, that, unless expressly authorized to do so, the president of the bank could not use the funds of the bank to pay his personal obligation; and, there being no proof of such express authority, the authorization given by him to the defendants was not a defense to the claim.

This is a writ of error by the defendants in the court below to review a judgment for the plaintiff, rendered upon the verdict of a jury by the direction of the court. The plaintiff sued as receiver of the Cheyenne National Bank to recover the sum of $10,000 and interest, as the balance of an account due to the bank from the defendants. At the close of the evidence on the trial, both parties requested the court to direct a verdict, and neither party asked to go to the jury upon any question of fact.

Stern & Rushmore (Chas. E. Rushmore, of counsel), for plaintiffs in error.

Hobbs & Gifford, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The principal question raised by the assignment of errors is whether the trial judge erred in refusing to direct a verdict for the plaintiff. Where the defendant excepts to the direction of a verdict for the plaintiff, but makes no request to go to the jury, he cannot be heard to assail the judgment upon the ground that there were questions of fact for the jury. Provost v. McEncroe, 102 N. Y. 650, 5 N. E. 795. Where both parties move for the direction of a verdict, and neither requests any question of fact to be submitted to the jury, they concede that there is no question of fact, and that the case turns wholly upon questions of law, which are to be determined as though the facts were undisputed. Thereupon every fact having the support of sufficient evidence is presumed to have been found in favor of the successful party, and the finding is conclusive if there is any evidence to sustain it. Kirtz v. Peck, 113 N. Y. 222, 21 N. E. 130; Sutter v. Vanderveer, 122 N. Y. 652, 25 N. E. 907; Leggett v. Hyde, 58 N. Y. 275; Koehler v. Adler, 78 N. Y. 289.

The evidence in the record was sufficient to establish the following facts: The National Bank of Cheyenne, located at Cheyenne,

in the state of Wyoming, had kept an ordinary banker's account with the defendants, private bankers at New York City. Prior to January, 1890, the account had been closed. In January, 1890, Collins, who was then president of the Cheyenne National Bank, in order to credit himself $10,000 in his personal account with the bank, caused entries to be made in the books of the bank,—one to his own credit of $10,000, and another intended to show, and showing, that he had deposited $10,000 with the defendants to the credit of the bank. At or about the same time he handed his own note for $10,000 to one Stebbins, who was a special partner of the defendants, with a request that Stebbins should indorse it, and procure the defendants to give the bank credit for the amount as a deposit made by Rogers. Stebbins indorsed the note, and left it with the defendants, at the same time informing them of what had taken place between Collins and himself. The defendants did not at the time make any specific appropriation of the note, or credit the amount to the bank. Several months later, and about June 1, 1890, Collins informed the defendants that, pursuant to his understanding with Stebbins, they had been charged on the books of the bank with a deposit of $10,000, and that this balance had appeared against them on the books of the bank for several months. At the same time he requested the defendants to notify the bank that the $10,000 had been deposited with them to its credit, and told them that the bank would not draw against the credit. After some correspondence between Collins and the defendant, and on June 7, 1890, the defendants credited the bank on their books with $10,000, and sent them a notice as follows: "Your account is credited this day $10,000 for use J. W. Collins with you." A day or two after they requested Collins to forward to them a new note for $10,000 in the place of that held by them, and which had been placed in their hands by Stebbins. Collins sent them a new note, but it was not satisfactory to the defendants in matters of form, and upon July 23d they again requested him to send them his note, payable on demand, and to send them at the same time, but separately, an authorization signed by him as president of the bank, authorizing them to charge up the note against the bank. Shortly thereafter Collins sent the new note to the defendants, together with the authorization, signed by him as president of the bank, to the effect that whenever a note for $10,000 made by Collins to the order of himself, indorsed by him in blank, should be presented to them for payment, they were to pay the same, and charge the amount to the account of the bank. Thereafter, and until November 13, 1891, the bank remained credited in this account upon the books of the defendants, and the defendants remained charged upon the books of the bank, with the $10,000, and statements were transmitted between the bank and the defendants, from time to time, showing the state of the accounts. November 13th the defendants learned that Collins was financially embarrassed, and thereupon they charged the account of the bank with the amount of the note. November 15th the bank failed, and passed into the hands of the plaintiff as receiver. Between June 7, 1890, and November 15, 1891, Collins' individual

account at the bank was largely overdrawn, and he owed the bank, at the time of the failure, about $9,000.

Upon these facts we entertain no doubt that plaintiff was entitled to a verdict. If Collins had deposited $10,000 with the defendants in the name of the Cheyenne National Bank, to be held by them for the bank in the form of an ordinary banker's credit to a depositor, it being understood between him and them that it was the purpose of the transaction to give him credit with the bank as for so much money received by it from him, it is entirely plain that no one without the authority of the bank would have had any right to meddle with the fund. By a deposit in its name, or to its credit, the title to the fund would have vested in the bank, and the defendants would have been at all times under obligation to pay it over to the bank upon request. What took place between Collins and the defendant was, in substance, the making of a deposit under circumstances such as have been supposed. Instead of depositing money, Collins deposited his own note, and the defendants received it as the equivalent of $10,000. They understood Collins to be representing himself, and not the bank, in all that took place between him and them prior to July 23d. They knew that the purpose of the transaction was to give Collins a personal credit with the bank for $10,000. Having assisted him in representing to the bank that they had given to it an ordinary banker's credit, as stated in their notice of June 7th, they cannot be heard to deny it by setting up a private understanding between Collins and themselves to the contrary. It is of no consequence that the bank had charged the defendants, and credited Collins, with $10,000, before that sum had been deposited to its credit with the defendants. When it was informed by the defendants' notice of June 7th that the credit that day given to it was "for use J. W. Collins with you," it had a right to rely upon the truth of the statement, and to deal with Collins thereafter as entitled to credit for that amount. While it may be conjectured, in view of the character of Collins' relations with the bank, that it would have permitted him at any time to overdraw his account, there is no evidence that it did not rely upon the credit in its subsequent dealings with Collins, and the presumption is that the notice given by the defendants influenced the bank as they intended it should. The authorization to the defendants by Collins, in his official capacity as president of the bank, to apply the fund in their hands belonging to the bank in payment of his note, does not protect the defendants. It is not pretended that Collins had any express authority to apply the funds of the bank to the payment of his own note. He had no implied authority to do so. There are no presumptions in favor of such a delegation of power. He who assumes to rely upon the authority of an agent to bind his principal to the discharge of the agent's own obligation must prove actual authority if contest arises. No principle of the law of agency is better settled than that no person can act as the agent of another in making a contract for himself. West St. Louis Sav. Bank v. Shawnee Co. Bank, 95 U. S. 557; National Park Bank v. German-American Mut. Warehouse & Security Co., 116

N. Y. 281, 22 N. E. 567; Anderson v. Kissam, 35 Fed. 699. If Collins had used his note with the defendants to procure an advance to the bank for its benefit, and not for his own, and had given them such an authorization, very different questions would be presented from those which are now in the case.

Error is assigned of a ruling upon the trial refusing to allow one of the defendants, a witness, to answer the question: "What was the transaction between you and the bank respecting the opening of this account?" The question called for a conclusion, and not for facts, and was therefore correctly disallowed. He was permitted to give all the facts. The statements of Mr. Stebbins, made to the defendants in October, 1890, which they sought to put in evidence, were mere hearsay, and were correctly excluded. We conclude that there was no error in the rulings on the trial, and that the judgment should be affirmed.