PARK HOTEL CO. v. FOURTH NAT. BANK OF ST. LOUIS.

(Circuit Court of Appeals, Eighth Circuit. April 18, 1898.)

No. 966.

1. CORPORATIONS—AUTHORITY OF PRESIDENT—NEGOTIABLE PAPER.

The general authority of the president of a business corporation to make and discount its promissory notes gives him no power to make a note of the corporation payable to his own order, and one who discounts such a note cannot recover thereon against the corporation without showing special authority for its execution.

2. PRINCIPAL AND AGENT—SCOPE OF AGENCY—NOTICE.

To the general rule that the acts and contracts of a general agent within the scope of his powers are presumed to be lawfully done and made, there is an exception as universal and inflexible as the rule. It is that an act done or a contract made with himself by an agent on behalf of his principal is presumed to be, and is notice of the fact that it is, without the scope of his general powers, and no one who has notice of its character may safely recover upon it without proof that the agent was expressly and specially authorized by his principal to do the act or make the contract.

3. CORPORATIONS—POWER TO MAKE ACCOMMODATION PAPER.

It is ultra vires of a corporation to make accommodation paper, or to guaranty the payment of the obligations of others.

4. SAME—RATIFICATION.

A contract which a corporation has no power to make, it has no power to ratify, and no power to estop itself from denying.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This writ of error challenges a judgment for $14,528 in favor of the Fourth National Bank of St. Louis, the defendant in error, and against the Park Hotel Company, a corporation, the plaintiff in error, upon a promissory note in these words:

"St. Louis, Mo., Dec'br 3rd, 1894.

"On February 1st, 1895, after date, I, the Park Hotel Co. of Hot Springs, Ark., promise to pay to the order of the Fourth National Bank of St. Louis, Mo., fifteen thousand dollars, for value received, with interest at the rate of eight per cent. per annum from maturity until date.

"The Park Hotel Co.,
"By Ed. Hogaboom, Pres't.
"Ed. Hogabcom."

The bank alleged in its complaint that this note was executed in renewal of a note of the hotel company of like amount, which was executed by it to the bank, for value received, on February 28, 1891, and which was extended from time to time, upon payment of interest, until December 3, 1894, when the note in suit was made in its stead. The hotel company denied that it made either of these notes; that it ever received any consideration for them; that it ever paid any interest on them; that they were ever extended at its request, or with its knowledge; denied that its president, Ed. Hogaboom, ever had any authority to make them; and averred that the entire transaction was one between Ed. Hogaboom and the bank, of which it never had any knowledge, and to which it never assented. At the close of the trial of the issues thus raised, the court below instructed the jury to return a verdict for the bank, and this charge is the error assigned. The essential facts upon which this instruction rests are these: In 1891 the Park Hotel Company was a corporation engaged in the construction and furnishing of an hotel, and afterwards in the operation of it, at Hot Springs, in the state of Arkansas; and Ed. Hogaboom was its president. On February 28, 1891, without paying the corporation any consideration therefor, and without the knowledge or consent of any other officer or agent of the hotel company, Hogaboom made a promissory note in this form:

"St. Louis, Feb'y 28, 1891.

"On June 28, 1891, after date, for value received, I, the Park Hotel Co. of Hot Springs, Ark., promise to pay to the order of Ed. Hogaboom fifteen thousand dollars, for value received, with interest at the rate of eight per cent. per annum from maturity until paid. The Park Hotel Co.,

"By Ed. Hogaboom, Pres't."

—indorsed his name upon it, pledged, as collateral security for its payment, 666 shares of the stock of the State Savings Bank & Trust Company of Hot Springs, which he owned, and whose face value was $16,650, discounted it at the Fourth National Bank of St. Louis, and procured from that bank, and spent for his own benefit, the proceeds of the discount. He renewed this note, obtained extensions of the time of payment of the debt it evidenced, and paid the interest on it, and $1,500 of the principal, until it was finally evidenced by the note of December 3, 1894, in suit. The bank sent notice of the maturity of the various notes which Hogaboom made to the hotel company at Hot Springs; but all these notices were received by Hogaboom, and none of the other officers or employés of the company were aware of this transaction, or of the existence of any of these notes, until about May 1, 1895, when one of the notices fell into the hands of the manager of the hotel. In August of that year the manager informed the treasurer of the corporation of his receipt of this notice, and all the directors were notified of the existence of the note of December 3, 1894, early in the month of March, 1896. Between May 1, 1895, and February 19, 1896, Hogaboom paid the interest on, and obtained several extensions of the time of payment of, this note; and on that day he paid the bank $1,500 of the principal of the debt, and gave it his three individual notes, for $4,500 each, payable in 30, 60, and 90 days from that date, respectively. The bank took these notes on account of the note in suit, but it retained the latter as collateral security for the payment of the three individual notes. In May, 1896, Hogaboom failed, and then the bank brought this action. On February 28, 1891, when the bank discounted the original note, Hogaboom represented that he had authority to borrow $20,000 for the hotel company, and that he was borrowing the money which he obtained by the discount of the note of that date for that corporation; and the officers of the bank believed these representations, but pursuant to the custom of that bank, in the words of the president, to "take the last indorser's check for the proceeds of such a note, showing that he, as indorser or guarantor, obtained the money. He can't go back on us, and say that he did not receive a consideration for the indorsement,"— the bank placed the proceeds of the discount to the individual credit of Hogaboom, and paid it out on his individual check. The hotel company never received any of the proceeds, or any credit or benefit from any of the proceeds, of the transaction.

J. M. Moore, for plaintiff in error.

George B. Rose (U. M. Rose and W. E. Hemingway, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Unless the hotel company is estopped from contesting the validity of the note in suit, this judgment must stand or fall by the transaction of February 28, 1891. The only consideration for this note is a discount by the bank of the note of that date. If the discount of that note did not charge the hotel company with any liability to the bank, then, unless it is estopped from making this defense, it never became liable upon any of the renewals of that note, because they were without consideration, and the bank knew that

fact when it took them. We lay aside, therefore, for the moment, the question of estoppel, and turn to the consideration of the transaction of February 28, 1891. The note which the bank discounted on that day was signed, "The Park Hotel Co., by Ed. Hogaboom, Pres't," was payable to the order of Ed. Hogaboom, and was indorsed by him. The bank discounted it, paid the hotel company nothing on account of it, placed all the proceeds of the discount to the credit of Hogaboom, and paid them out on his check. The legal result of the transaction was that Hogaboom had made the corporation's accommodation note, payable to his own order, and the bank had discounted it, and paid him the proceeds of it. There is no evidence in this record that Hogaboom was ever specially authorized by the hotel company to make this note, and to discount it for his own benefit, or to make any note of the corporation payable to his own order, or any contract of the corporation with himself. The bank seeks to recover on the ground that Hogaboom had general authority to conduct the business of the hotel company, and to make and discount its commercial paper. The briefs and arguments of counsel exhaustively discuss this question under the by-laws of the corporation and the statutes of Arkansas. There is an objection to the recovery in this case, however, which lies deeper, and is liable to be more fatal in its consequences, than any answer we might give to that question. It is that the execution of this note was not within the scope of the general power of the president to make commercial paper of the corporation. General authority to conduct the business and to issue the promissory notes of a corporation is authority to do those acts for corporate purposes, and in the interest of the corporation, only. It does not include the power to do them for the exclusive benefit of others, to the detriment of the corporation. And while a promissory note, made by an agent or officer having such authority, in the usual form, and taken by a stranger in the ordinary course of business, carries with it the presumption that it was issued for corporate purposes, and under lawful authority, a note issued by such an agent, payable to himself, is accompanied by no such presumption, but is itself notice that it is without the scope of his general power, and that it does not bind his principal, unless its execution was specially authorized by the corporation, through its directors or officers, other than the agent to whom it is payable. Such a note is a danger signal, which the discounter or purchaser disregards at his peril. It is notice to him that, if it is contested, he cannot recover upon it, under any general authority in the agent, or at all, unless he proves that the agent was specially authorized to make that particular transaction, or to make contracts of the corporation with himself. To the general rule that the acts and contracts of a general agent, within the scope of his powers, are presumed to be lawfully done and made, there is an exception as universal and inflexible as the rule. It is that an act done or a contract made with himself by an agent on behalf of his principal is presumed to be, and is, notice of the fact that it is without the scope of his general powers, and no one who has notice of its char-

acter may safely rely or recover upon it without proof that the
agent was expressly and specially authorized by his principal to
do the act or to make the contract. West St. Louis Sav. Bank v.
Shawnee Co. Bank, 95 U. S. 557; Bank v. Wagner (Ky.) 20 S. W.
535, 537; Smith v. Association, 78 Cal. 289, 293, 20 Pac. 677; Mor.
Priv. Corp. § 517; State Nat. Bank v. Newton Nat. Bank, 32 U.
S. App. 52, 58, 14 C. C. A. 61, 64, and 66 Fed. 691, 694; Bank v.
Armstrong, 152 U. S. 346, 352, 14 Sup. Ct. 572; Chrystie v. Foster,
26 U. S. App. 67, 72, 9 C. C. A. 606, 609, and 61 Fed. 551, 553; Bank
v. Atkinson, 55 Fed. 465, 472, 474; Claflin v. Bank, 25 N. Y. 293,
295, 299, 301; Gallery v. Bank, 41 Mich. 169, 2 N. W. 193; Cham-
berlain v. Wool-Growing Co., 54 Cal. 103. This exception is a strik-
ing illustration of the policy of the law to prevent the possibility
of conflict between the duty and the personal interest of an officer
or agent. It prohibits him from acting for both himself and his
principal wherever their interests clash, and makes every act and
contract in which he violates the inhibition voidable at the election
of his principal. It forbids him to act at the same time as vendor
and purchaser, or as lender and borrower, or as promisor and prom-
isee. It forbids him to sell as the agent of his principal, and to
buy for himself; to lend as the agent of his principal, and to borrow
for himself; to promise as the agent of his principal, and to accept
the promise and reap the benefits himself. McKinley v. Williams,
36 U. S. App. 749, 752, 20 C. C. A. 312, 313, and 74 Fed. 94, 95, and
cases cited; Donovan v. Campion, 27 C. C. A. 177, 85 Fed. 71, 73.
In West St. Louis Sav. Bank v. Shawnee Co. Bank, supra, the cash-
ier of the bank made his own note, payable to the order of the
bank, indorsed his official signature upon it, and borrowed money
of one whom he told that he intended to use it to pay the bank
for some stock which he had purchased of it. The lender sued the
bank on the indorsement, and sought to hold it by virtue of the
general power of a cashier to indorse and rediscount the commer-
cial paper of the bank. The supreme court conceded the existence
of the general rules that the cashier has power to indorse and re-
discount the commercial paper of the bank, and that, if he has
made a bona fide rediscount of its paper, his acts will be binding,
because of his implied power to transact such business, and then
added:

"But certainly he is not presumed to have power, by reason of his official
position, to bind his bank as an accommodation indorser of his own prom-
issory note. Such a transaction would not be within the scope of his gen-
eral powers, and one who accepts an indorsement of that character, if a
contest arises, must prove actual authority before he can recover. There
are no presumptions in favor of such a delegation of power. The very form
of the paper itself carries notice to a purchaser of a possible want of power
to make the indorsement, and is sufficient to put him on his guard. If he
fails to avail himself of the notice, and obtain the information which is thus
suggested to him, it is his own fault, and, as against an innocent party, he must
bear the loss."

In Smith v. Association, 78 Cal. 289, 293, 20 Pac. 677, and Bank
v. Wagner (Ky.) 20 S. W. 535, 537, the agents made the notes of
their corporations, payable to their own order, and then indorsed

and discounted them, as in the case at bar; and the same rule was applied. The supreme court of Kentucky said:

"Now the notes bear upon their face the conclusive evidence of the fact that they were issued by Mr. Mathews, as agent, to himself, as principal, which was notice of itself to the appellants that the notes were void at the instance of the company, which destroyed their immunity as innocent purchasers. Consequently they could not recover thereon unless they could show that the company, by its superior officer, authorized so to do, or by its board of directors, with like authority, authorized Mr. Mathews to thus issue the notes because, the appellants being, prima facie, not innocent purchasers,—the notes being void upon their face,—they, in order to recover from the company, must show that they were issued rightfully and properly by the company's agent, which they have failed to do."

If, therefore, we concede that Hogaboom had general power to make and discount the promissory notes of the hotel company, yet the note of February 28, 1891, was not binding upon that corporation, under its denial of its execution in its answer, because his general authority gave him no power to make a note of the corporation payable to his own order, and the bank failed to prove that he had any special authority so to do.

There is another reason why the note of February 28, 1891, was not binding upon the hotel company. It is that it was an accommodation note, that the bank had notice of that fact when it discounted the paper, and that it was beyond the powers of the corporation to make a note of that character. The form of the note, as we have seen, deprived the bank of the immunity of an innocent purchaser, and gave it notice that Hogaboom had no power to make it under his general authority, and that, if the corporation contested it, it must discover and prove special power in him to do so. It gave the bank notice of every fact that a reasonably diligent inquiry to find and prove Hogaboom's special authority to make the note would have discovered, and such an inquiry would certainly have brought to its knowledge the fact that the corporation had given no such authority, but that Hogaboom had made the note for his own accommodation. Moreover, the bank knew from the transaction itself that the hotel company received no consideration for the note, and that it had actually discounted the accommodation note of that corporation for the benefit of Ed. Hogaboom. The fact that Hogaboom told the president of the bank, when he applied for the loan, that he was borrowing the proceeds of the note for the hotel company, and the fact that the president understood that the bank was loaning to the hotel company, are not forgotten. But this contract was not made by what these parties said or understood, but by what they did. Hogaboom presented to the bank the note of the corporation, signed by himself as its president, payable to his own order, and indorsed by himself. He informed the bank that he wanted to borrow money on it for the hotel company. That statement was notice to the bank that this note was not one which the corporation had given to Hogaboom for value, and that it was one which he had made without paying any consideration to the corporation for it, in order to enable him to borrow money. With this knowledge, the bank dis-

counted the note, and instead of paying its proceeds to the hotel company, which it now claims was the borrower, it placed them all to the individual credit of Hogaboom, and paid them out on his individual check. It is said that the bank is not liable for Hogaboom's misapplication of the fund. Let the proposition be conceded. But it was not Hogaboom, and it was the bank, which applied the proceeds of this note to Hogaboom's use. It was the bank, and not Hogaboom, which placed the proceeds of the discount to his individual credit, pursuant to a custom of its own, so that, in the words of its president, the indorser "can't go back on us, and say that he did not receive a consideration for the indorsement." The bank cannot escape the knowledge or the effect of that which it did itself, and it discounted a note which it knew that the president of the hotel company had made payable to himself, without giving any consideration therefor to the corporation, and paid all the proceeds of the discount to the individual. In other words, it discounted the accommodation note of the corporation, with knowledge of its character, and paid the proceeds of the discount to the party accommodated. Nor did it ever give any consideration but the proceeds of this discount for the note of December 3, 1894, on which this judgment rests, or for any of the other renewals of the original note of February 28, 1891, so that they were all mere accommodation notes of the corporation; and this to the knowledge of the bank, because the bank took them, and knew well what consideration was paid for them. But it is ultra vires of a corporation to make accommodation paper, or to guaranty the payment of the obligations of others. Lyon, Potter & Co. v. First Nat. Bank of Sioux City, 85 Fed. 120, 122; National Park Bank v. German-American Mut. W. & S. Co., 116 N. Y. 281, 292, 22 N. E. 567; Central Bank v. Empire Stone-Dressing Co., 26 Barb. 23; Bridgeport City Bank v. Same, 30 Barb. 421; Farmers' & Mechanics' Bank v. Same, 5 Bosw. 275; Morford v. Bank, 26 Barb. 568; Genesee Bank v. Patchin Bank, 13 N. Y. 309; Ætna Nat. Bank v. Charter Oak Life Ins. Co., 50 Conn. 167; Monument Nat. Bank v. Globe Works, 101 Mass. 57; Davis v. Railroad Co., 131 Mass. 258; Culver v. Real-Estate Co., 91 Pa. St. 367; Hall v. Turnpike Co., 27 Cal. 255; Madison W. & M. Plank-Road Co. v. Watertown & P. Plank-Road Co., 7 Wis. 59; Lucas v. Transfer Co., 70 Iowa, 541, 549, 30 N. W. 771. Here, too, is the answer to the contention that the hotel company is estopped from contesting the validity of these notes. A contract which a corporation has no power to make, it has no power to ratify, and no power to estop itself from denying. Bank v. Kennedy, 167 U. S. 362, 371, 17 Sup. Ct. 831; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S. 564, 581, 16 Sup. Ct. 1173; Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 59, 60, 11 Sup. Ct. 478; Railway Co. v. Hooper, 160 U. S. 514, 524, 530, 16 Sup. Ct. 379. If the hotel company had ever received any consideration for these notes, and if the bank had not had notice that the corporation received nothing for them, those facts would have removed the notes from the category of accommodation paper, and the corporation might have been estopped from denying their

validity. Lyon, Potter & Co. v. Sioux City Nat. Bank, 85 Fed. 120, 122. But the hotel company received no consideration for them, and the bank knew it; so that the notes fall without the limits of voidable contracts, and there is no basis for an estoppel. The result is that the bank was not entitled to a judgment in this case, (1) because the note on which it sued, and the original note of which that was a final renewal, were accommodation notes of the hotel company, and hence beyond the powers of that corporation to make, or to validate by ratification or estoppel, and the bank was charged with knowledge of their character, by its discount of the original note for the sole benefit of its indorser, and by the form of that note; and (2) because it failed to prove that the president of the hotel company was specially authorized to make the original note on behalf of the corporation, payable to his own order, and to discount it, and receive the proceeds of it himself. The judgment must be reversed, and the case must be remanded to the court below, with directions to grant a new trial, and it is so ordered.