## BUCKBEE v. P. HOHENADEL, JR., CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915. Rehearing Denied May 25, 1915.)

No. 2142.

1. APPEAL AND ERROR ☞997—DIRECTED VERDICT—FINDINGS—CONCLUSIVE-NESS.

In an action for breach of contract in failing to furnish the variety of cucumber seed ordered, defendant's request for a directed verdict at the conclusion of plaintiff's evidence, and at the conclusion of all the evidence, operated as a request that the court find the facts, and the facts as found were conclusive upon the parties; the reviewing court being limited to the correctness of the conclusions of law thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4023, 4024; Dec. Dig. ☞997.]

2. APPEAL AND ERROR ☞997—REVIEW—EFFECT OF DIRECTED VERDICT.

That a motion for a directed verdict operates as a request that the court find the facts, and is conclusive upon the parties upon appeal, does not prevent consideration of the inadmissibility of rejected evidence, nor waive exceptions to the rulings of law thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4023, 4024; Dec. Dig. ☞997.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. SALES ⊕⇒445—ACTION FOR BREACH OF WARRANTY—DIRECTED VERDICT.

In an action for breach of contract in failing to furnish the variety of cucumber seed purchased, testimony by some of plaintiff's witnesses that they had not known the name of the brand ordered to be used to designate a certain variety of seed did not make plaintiff's evidence so uncertain as to render the direction of a verdict in his favor erroneous, where numerous witnesses sustained plaintiff's contention as to the designation.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1303–1308; Dec. Dig. ⊕⇒445.]

4. SALES ⊕⇒442—BREACH OF WARRANTY—MEASURE OF DAMAGES.

Where seed is sold to a dealer under a warranty that it is of a special variety, and the dealer in turn sends it to a grower, the warranty is carried forward to the ultimate purchaser, if it appears that such understanding was part of the first sale, and the measure of damages for breach of warranty is the difference in market value between the crop produced and such crop as the specified variety of seed would have produced under like conditions.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. ⊕⇒442.]

5. SALES ⊕⇒442—BREACH OF WARRANTY—DAMAGES.

The purchaser of seed warranted to be of a specified variety, and which he resells to a grower, may recover from the dealer the actual loss due to misrepresentation as to the variety although he has not liquidated his liability to the subvendee for breach of warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. ⊕⇒442.]

6. EVIDENCE ⊕⇒460—PAROL EVIDENCE—EXPLANATION OF TERMS OF SALES CONTRACT.

In an action for damages for failing to deliver cucumber seed bought under a written contract as being "Improved Chicago Pickling," evidence that the purchaser was informed as to the kind of seed actually furnished, that it had been developed from seed purchased from a certain company, and that he agreed that it should be labeled "Improved Chicago Pickling," was improperly excluded; it being in explanation, and not in variation, of the terms of the written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. ⊕⇒460.]

7. SALES ⊕⇒440—BREACH OF WARRANTY—SALES BY SAMPLE—EVIDENCE.

In an action for damages for failing to deliver "Improved Chicago Pickling" cucumber seed under a written contract, evidence that the seller produced cucumbers from the seed contracted for as samples and sent them to the purchaser previous to the delivery was admissible to show notice of the actual nature of the seed to be delivered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. ⊕⇒440.]

In Error to the District Court of the United States for the Western Division of the Northern District of Illinois; George A. Carpenter, Judge.

Action by the P. Hohenadel, Jr., Company against H. W. Buckbee, There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

The plaintiff in error, Buckbee, was defendant below in the suit of P. Hohenadel, Jr., Company, a Wisconsin corporation, as plaintiff, for recovery of damages upon contract. On trial of the issues to a jury verdict was directed by the trial court and so rendered against

the defendant for $12,921.40 damages assessed in favor of the plaintiff, and this writ of error is brought for reversal of the judgment awarded thereupon. The material questions raised by the assignments of error are stated in the ensuing opinion, and the issues under the pleadings are well summarized in the brief for defendant in error, as follows:

"The declaration set out in hæc verba in the second count two contracts, the first of October 17, 1903, and the second of October 23, 1903. The first contract was in the form of an order and acceptance for 300 pounds of 'Chicago Pickle' cucumber seed at the price of 70 cents per pound for future delivery, f. o. b. Rockford, net cash, 30 days, 1½ per cent. discount for cash in 10 days. The second contract was for 3,500 pounds of cucumber seed, 'Improved Chicago Pickling,' upon the same terms. The declaration then alleged that the plaintiff, at the time of making such contracts, was acting as the agent for P. Hohenadel, Jr., but that the fact of such agency was not disclosed to defendant at the time of making either of said contracts, and further alleged that the cucumber seed mentioned in the contracts as 'Chicago Pickle' and 'Improved Chicago Pickling' were known as and were one and the same, and that the second contract was an extension and further order under the first contract, and said two contracts were treated by the plaintiff and defendant as one order, and the deliveries thereunder were made as if under one and the same contract.

"The declaration then alleged that 2,500 pounds of cucumber seed were delivered under the said contracts on March 4, 1904, and 1,300 pounds on March 9, 1904, and the plaintiff thereupon paid the defendant the purchase price of the said cucumber seed, and that neither at the time of the purchase nor at the time of delivery could the plaintiff, by an examination or inspection of said cucumber seed, tell or ascertain whether said cucumber seed were of the variety or kind known as 'Chicago Pickle' or 'Improved Chicago Pickling,' and that such variety of seed was specially adapted for producing a high grade of cucumbers for pickling, and that the kind of cucumber seed could not be ascertained until the seed were planted and cucumbers grown therefrom; that the defendant did not keep and perform its said contracts and warranties as to the quality of said seed, and the seed delivered were not 'Chicago Pickle' or 'Improved Chicago Pickling' cucumber seed, but said seed were then and there of an inferior variety of cucumber seed, that would not produce, when planted, cucumbers specially adapted to the production of a high grade of cucumbers for pickles; that both P. Hohenadel, Jr., and the plaintiff were engaged in the business of selling cucumber seed, and in the business of planting and growing cucumbers for pickling, and in pickling the same, as defendant then and there well knew, and it was then and there a custom and usage well known to the defendant for the purchasers of seed, in order to sell said seed and obtain a crop therefrom, to contract to take all of the cucumbers produced from such seed, and that, relying upon the warranties aforesaid, P. Hohenadel, Jr., sold said cucumber seed to P. A. Marsh under a like warranty; that Marsh sold said cucumber seed to others, including numerous producers of cucumbers, and at the time of such sale contracted with some of the producers to purchase from them the whole product of said seed; and that, in consequence of the plaintiff's breach of warranty, the said Marsh was compelled to take the product of said cucumber seed, and, in consequence, suffered great damage, and said P. Hohenadel, Jr., incurred large liability and suffered damage in the sum of $30,000. To this declaration the defendant pleaded the general issue, non assumpsit, 'that he did not promise in the manner and form as the plaintiff has  *  *  *  in its additional counts  *  *  *  complained.' "

James G. Elsdon, of Chicago, Ill., for plaintiff in error.
John M. Zane, of Chicago, Ill., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The judgment against the defendant below, plaintiff in error Buckbee, arose under his contracts for sale and delivery to the plaintiff corporation, P. Hohenadel, Jr., Company, of cucumber seed of specified variety, and the verdict in favor of the plaintiff (directed by the trial court) awards recovery pursuant to two propositions, in substance: (1) That the evidence establishes delivery of a different variety of seed, not adapted to the purpose contemplated by the contract; and (2) that damages are proven and recoverable for the difference in market value between the crops produced from the seed so delivered and such crops as the variety of seed specified in the contracts would have produced under like conditions. Thus, in one or another form of presentation, the tenability of both of these propositions requires determination under the assignments of error. Other material questions arise upon rulings against the reception of testimony offered on behalf of the defendant. For consideration, however, of both propositions above stated, involving substantially the merits of the issues under the pleadings, this question arises for settlement at the threshold of inquiries under the assignments, namely: To what extent and for what tests, is the evidence reviewable thereupon?

[1] 1. The verdict against the defendant was directed by the court, and the general rule in such case, both of reviewability of the entire evidence and of the tests to be applied thereto, is unquestionable. But in the present record both the bill of exceptions and assignments of error disclose motions on behalf of the defendant, described in assignments 1, 2, 3, and 4 as denied by the court, as follows:

(1) "To direct a verdict in favor of the defendant, at the conclusion of the plaintiff's case;" (2) "to strike plaintiff's evidence and to direct a verdict in favor of the defendant at the conclusion of all the evidence;" (3) "to direct a verdict for the sum of $300 against the defendant at the conclusion of plaintiff's case;" (4) "to direct a verdict for the sum of $300 against the defendant at the conclusion of all the evidence."

It is manifest, therefore, that the defendant expressly submitted and "affirmed that there was no disputed question of fact which could operate to deflect or control the question of law," and that the rule stated and upheld in Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 567 (39 L. Ed. 654), is applicable and controlling for answer to the foregoing inquiry, namely:

"This was necessarily a request that the court find the facts, and the parties are therefore concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited in reviewing its action to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof."

We are not advised of any decision of the Supreme Court which tends to disturb this ruling, and it appears to have been uniformly adopted and enforced by the Circuit Courts of Appeals in the various circuits whenever the effect of such motions has arisen. The following precedents with their citations are deemed sufficient for mention: Chrystie v. Foster, 61 Fed. 551, 9 C. C. A. 606; Magone v. Origet, 70 Fed. 778, 17 C. C. A. 363; United States v. Bishop, 125 Fed. 181,

60 C. C. A. 123; Phenix Ins. Co. v. Kerr, 129 Fed. 723, 64 C. C. A. 251, 66 L. R. A. 569; Love v. Scatcherd, 136 Fed. 1, 77 C. C. A. 1; Bradley Timber Co. v. White, 121 Fed. 779, 58 C. C. A. 55; Century Throwing Co. v. Muller, 197 Fed. 252, 257, 116 C. C. A. 614. Both of the above-mentioned requests for direction of verdict "at the conclusion of all the evidence" were necessarily predicated on the defendant's submission and assurance that the evidence raised no issue of fact for determination within the exclusive province of the jury, that conclusions of law were alone involved therein, and that the ruling of the court accordingly was directly invoked on behalf of the defendant below. On such state of the record, not only administration of justice, but the entire line of authorities referred to, concur in denial of his right, as plaintiff in error, to have that submission reopened for review of the testimony, except to ascertain whether evidence appears in support of the ultimate conclusions of law thereupon in favor of plaintiff below.

[2] We do not understand, however, that these motions affect in any manner the assignments of error for rejection of testimony offered on behalf of the defendant in the course of the trial, and the contentions in support of the judgment, that errors of law therein (if committed) were either waived or otherwise cured by such motions, must be overruled. The submission above described involved alone the effect of the testimony which was received and entered into denial of the motions, so that it can neither embrace the offers of rejected testimony, nor waive exceptions duly preserved to the rulings of law thereupon.

[3] 2. Whatever of conflict appears in the testimony, therefore, in reference to the first proposition above mentioned as one of fact which was upheld by the trial court for direction of verdict in favor of the plaintiff, the contention of reversible error in such ruling is untenable, as we believe, for the reason that the record exhibits considerable testimony (to say the least) in support of the ruling therein. When the testimony introduced by plaintiff upon that issue is read and analyzed for its bearing within the above-stated rule, we believe sufficient evidence is presented for the required proof of every element embraced in such issue, namely, that the contract specified a distinct variety of seed, well known for production of the quality of cucumbers for pickling purposes thereby contemplated; that instead thereof the defendant delivered a different variety, not ascertainable from inspection of the seed; and that the product thereof was inferior and not adapted to the known purpose of the contract. It is unquestionable that the plaintiff's case (both under its declaration and testimony) rests on these averments of meaning of the terms "Chicago Pickle," as used in one contract, and "Improved Chicago Pickling" as used in the second contract: That both "are one and the same variety, which produces a character of cucumber" as described, and that both were the identical variety of seed which had long theretofore been well known in the trade as "Westfield's Chicago Pickle." While the testimony of numerous witnesses supports each of these contentions, it further appears that four of the witnesses introduced for the plaintiff on that issue

testified in substance that they had not known the term "Improved Chicago Pickling" to be so used; and referring to these instances of failure to sustain the averments, together with testimony adduced by the defendant, the contention is pressed for reversal that uncertainty is thus established in the contract terms, whereby the direction of verdict was erroneous. We are of opinion, however, that neither the instances of failure referred to nor the defendant's testimony can affect the inquiry above defined of support for the direction; and it may well be remarked in this connection that other evidence appears in support thereof, including catalogues published by the defendant which may bear interpretation in favor of the alleged identity of the contract terms. The various contentions of error, therefore, in finding the above-stated premise of fact, must be overruled.

3. The remaining premise upon which verdict was directed, as above mentioned, involves both findings of ultimate fact and the conclusions of law on which the award of damages rests. Upon the questions of fact raised the rule heretofore stated is equally applicable and renders their solution free from difficulty. But the conceded and undisputed state of facts presents a question or questions of law upon the character and measure of damages recoverable thereupon, which may not be clearly settled by the authorities. We proceed, therefore, to their consideration under the finding of fact that the seed delivered were neither of the variety contracted for nor adapted to produce the pickling cucumbers for which the purchase was made within the contemplation of both parties.

[4] The general rule to be applied for recovery of damages in the event thus stated, when the seed is sold to the purchaser as grower of the product, is settled by the authorities (both English and American) as the loss suffered in the production of a crop therefrom; and the great preponderance of authority upholds the measure of damages in such cases, as adopted by the trial court, to be the difference in market value between the crop actually produced and that which would have been produced had the seed been of the variety specified in the contract. We do not understand that this view of the general current of authority is controverted, although precedents are cited as tending to introduce other elements; but we believe the measure above stated to be both well founded and the established rule, so that citation or review of the authorities is not needful thereupon. It proceeds on the reasonable view that the crop actually raised may rightly furnish the prima facie test of the amount of crop which would have been raised from the stipulated variety, and thus becomes neither speculative nor remote for estimation of damages. This rule, however, as above formulated, imposes the element of direct contract between the seller and the grower of the seed, not present in the case at bar, and applicability of like measure of damages to various conditions which are presented raises important questions not entirely involved in any of the authorities called to our attention. Authorities are cited for extension of the rule to sales made to a dealer for resale to growers of the seed, under like representations, for like measure of damages against the primary vendor, when actually incurred through the resale. But the damages

awarded herein are predicated on extension of such measure beyond their direct scope.

The undisputed evidence establishes this state of facts: The seed delivered under the contract was neither planted by the plaintiff, as purchaser, nor were the crops therefrom raised under its direction, nor for its benefit; but the purchase was made by it, without notice thereof to the defendant, for the individual use and benefit of P. Hohenadel, Jr., for purposes of resale to other dealers. It was so sold and delivered by Hohenadel to one Marsh, as "Chicago Pickling seed" —Marsh being engaged in the pickling business and in contracting with producers for cucumber crops and seed furnished by himself. Marsh delivered this seed to numerous growers for such production of crops for his use; and of such deliveries the proof is limited to identification of growers and crops as to 565 pounds of seed planted, together with one lot of seed hereinafter mentioned for which damages were liquidated at $300. The remaining portions of seed delivered under the contract, not thus identified, do not enter into the award of damages. While it is contended on behalf of the defendant that these identifications were not complete, we believe sufficient identification appears to that end. The only proof, however, that damages were actually paid, either by plaintiff or by Hohenadel, to indemnify Marsh for his loss, was a single payment of $300 for loss on the lot of seed above referred to, which constitutes the item for which award of damages in favor of the plaintiff was requested on behalf of the defendant, as hereinbefore stated, so that the proof in that respect is not open to controversy herein. For the remaining amount of damages awarded, the following further facts appear: When the suit was commenced, the corporation was joined with Hohenadel (its undisclosed principal in the contract) as coplaintiffs, and such damages had neither been paid to Marsh, nor had liquidation or adjustment thereof with him occurred in any form. The issues were brought to trial during the lifetime of Hohenadel, without liquidation or adjustment thereof with Marsh, but resulted in a mistrial. Prior to the present trial Hohenadel died, having made no adjustment in any form with Marsh, nor does any specific claim appear to have been made by Marsh for damages (other than the $300 paid as above mentioned) while Hohenadel was living; and the only evidence of specific claim therefor appears as a claim filed by Marsh against the estate of the deceased, pending hearing in the proper county court in probate. The declaration, however, expressly avers, not only grounds for, but fact of, his liability to Marsh.

For application of the measure of damages awarded by the verdict to the above state of facts, the authority mainly relied upon is an English decision (1858) of unquestionable importance—Randall v. Raper, Q. B. 4 Jur. (N. S.) 662, El. B. & El. 84, 120 Eng. Rep. 438— which does not appear to be qualified or disaffirmed in any decision, English or American, called to our notice. The issues presented are thus stated in the head note:

"Defendant sold to plaintiff barley warranted to be 'Chevalier's seed barley.' Plaintiff sold it to other persons with the same warranty. The seed

turned out to be not according to warranty. The subpurchasers, who had sown the seed, made claims on plaintiff for the damages which they had sustained, but such claims had not been paid by plaintiff."

The opinion by Lord Campbell, C. J., clearly and tersely states the rulings thereupon, as follows:

"It has been contended that if the plaintiff had paid to the subpurchasers the full amount of the damages which they have sustained from the breach of the warranty, still he would not have been entitled to recover them. The true rule on the authorities is, that the plaintiff must show that the damage which he seeks to recover naturally arose from the breach of contract complained of. In this the damage sustained by the subpurchasers was the natural—yea, the necessary—consequences from the breach of contract by the defendant. The defendant sold the barley with a warranty that it was 'Chevalier's seed barley'; if it was not, it would not, when sown, produce grain of that quality, quite independently of soil or climate. The difference in value between the inferior crop grown and that which would have been produced if the seed had been as warranted is the natural and necessary loss from the breach of the warranty. Therefore, the defendant having warranted the barley as 'Chevalier's seed barley,' if the plaintiff had been sued by the subpurchasers, he would have been obliged to pay damages to that extent, and these he would have been entitled to recover from the defendant.

"But the main point brought before us is whether the plaintiff can recover as damages an amount which he has not paid to the subpurchasers, and for which they have only made claim not enforced by legal proceedings. We cannot lay down a rule that a mere liability, which has not been enforced, will not give a right to recover damages. Cases of extreme hardship might occur if such were the rule, and no authority has been cited to show that a liability to pay damages is not enough to sustain a right to damages. The cases which were cited are not in point. If liability to pay damages may be a ground of recovering special damage, why should not the liability be estimated by the jury? And that is all that has been done in this case. They have estimated the probable loss which the subpurchasers may recover from the plaintiff. The demand having been made, there is an easy mode of ascertaining the amount; and it is almost an inevitable consequence that the demand would be enforced. Therefore I am of opinion that the verdict ought to stand."

Concurring opinions are strongly expressed by Justices Erle and Crompton; and Justice Wrightman concurs as having "no doubt on the principle enunciated and that if the claims of the subpurchasers had been paid by the plaintiff, he might have recovered them from the defendant," but expresses doubt whether recovery is authorized for a claim of damages neither paid nor liquidated, with this remark: "I do not press this doubt further than to mention it."

In 3 Sutherland on Damages (3d Ed.) § 675, the eminent author thus states the rule as applicable to a purchase for resale:

"Where seeds are sold with a warranty that they are of a kind identified by a particular name, with notice that the purchaser intends to sell them again to persons who will purchase for the purpose of sowing them, if the warranty is untrue there seems to be no difference in principle as to the subject of damages between such a sale and one with such warranty where the purchaser is known to buy for the purpose of sowing them himself. The warranty to one buying seed to sell again justifies him in warranting it accordingly to his customers; and as they have recourse to him for damages estimated by the standard mentioned in the first paragraphs of the preceding section, that is also the measure of his loss as against his vendor."

In Passinger v. Thorburn, 34 N. Y. 634, 639, 90 Am. Dec. 753, the opinion by Davies, C. J., reviews the rulings in Randall v. Raper, supra, and states:

"This is the well-settled law in this country, it having been held that, where an article is sold with a warranty, and the vendee resells with a like warranty, the sum paid by him in an action by his subvendee for a breach of that warranty is prima facie evidence of the amount which he will be entitled to recover from his vendor in an action in his own behalf. Reggio v. Braggiotti, 7 Cush. [Mass.] 166; Armstrong v. Percy, 5 Wend. [N. Y.] 535; Blasdale v. Babcock, 1 Johns. [N. Y.] 518. And this court, in Muller v. Eno, 14 N. Y. (4 Kernan) 597, held that a purchaser may recover for a breach of a warranty, although he has sold the goods and no claim has been made on him, and that it was not necessary for him to show the price on the resale. That price may be evidence of the damages, but does not furnish the rule in respect to them."

We are impressed with no doubt that the doctrine on which damages are awarded for misrepresentation in the sale of seed is equally applicable to both classes of sale, as upheld in Randall v. Raper; that no substantial distinction exists to authorize one rule of just recovery when sale is made directly to the grower, and a different and plainly inadequate measure when sold to a dealer for resale to growers of the seed. The seller who gathers and packs the seed for sale is necessarily required to know its variety for the intended use by growers, and his warranty thereof, whether directly made to the grower or to the intermediate dealer for resale to growers, may justly render him chargeable for the damages suffered by the growers, when the circumstances of his sale authorize the inference that the warranty was to be thus carried forward to the growers. Indemnity for misrepresentations so carried forward is within the contemplation of his contract of sale to the dealer, and allowance thereof is not open to the objection of remote or speculative damages.

Under the facts above stated, the vendee Marsh undoubtedly stands in the relation of producer of the crop, which he obtained through placing out the seed with the actual growers; and the distinction from the facts involved in Randall v. Raper arises out of the intervention of Hohenadel as the actual vendee. Although the purchase was made for his use and benefit, such purpose was not disclosed to the defendant in making the contract. Nevertheless the negotiations were entirely with Hohenadel, who drafted and executed the contract on the part of the corporation, and the question whether the defendant understood that the seed as warranted by him was to be resold to a grower, as averred in the declaration, does not impress us to be materially affected by such personal relation of Hohenadel in the transaction. The crucial inquiry was of defendant's understanding of such purpose of direct resale to the grower, and thereupon we believe the finding, under circumstances in evidence, is not reviewable on the present inquiry.

On the other hand, however, we are of opinion that the principle of the rule for this extraordinary allowance of growers' damages, requires its limitation as defined in the above quotation from Sutherland on Damages. The warranty direct to the growers imposes such liability per se. Not so in the case of sale to a dealer, wherein various interpositions may arise before ultimate sale to growers, all beyond oversight on the part of the original seller; and without his concurrence, either express or implied, for carrying forward the warranty

to a grower, we believe the ordinary liability for breach of contract must arise, which does not extend to loss suffered by the grower. So, in making such sale, he may either decline or accept the extraordinary liability involved in a sale to the grower. But if he warrants to the dealer, with the understanding that resale is to be made directly to growers of the seed, he may rightly become bound for the loss thus brought directly within the contemplation of his sale and warranty. The issue raised herein as to such understanding on the part of the defendant in making the contracts, must be determined from the evidence, circumstantial or direct, with the burden resting on the plaintiff to establish such understanding as an issue of fact. In the event, therefore, of submission to a jury, on retrial of all issues (as hereinafter directed), instructions will become needful, in conformity with the foregoing opinion, upon such issue of fact as may be presented by the evidence for assessment of damages under one or the other rule.

[5] We are of opinion, therefore, that the foregoing considerations authorized the rule of damages adopted herein, unless the above-stated facts, that the plaintiffs had neither paid nor adjusted the damages suffered by the grower of the crops, bar recovery of indemnity on their behalf of the alleged liability incurred through the sale to the grower; and the question of right to recover thereupon, beyond the above-mentioned $300 item of damages which was paid, remains for determination. That such recovery is authorized without prepayment of the plaintiff's liability to the subvendee is expressly decided (as above shown) in Randall v. Raper, supra, but the contentions of error in like ruling herein are in substance: (a) That it is unsupported by any other authority; and (b) that its doctrine is unreasonable and open to serious abuse. We believe neither of these propositions is tenable. Like rule is uniformly recognized and applied for recovery of the amount of medical or other professional services incurred by the injured party, under circumstances which create liability against the defendant therefor, whether actually paid or adjusted or merely an outstanding liability. It is likewise applied for recovery of damages upon breach of warranty in sale of chattels, within the general rule, in Muller v. Eno, 14 N. Y. (4 Kernan) 597, and cases there cited— referred to in Passinger v. Thorburn, supra, as equally applicable to the present inquiry. For analogous application, see Smith v. McNair, 19 Kan. 333, 27 Am. Rep. 117; Denton v. Fisher, 102 Md. 386, 62 Atl. 627, 3 L. R. A. (N. S.) 465; Western Twine Co. v. Wright, 11 S. D. 521, 78 N. W. 942, 44 L. R. A. 438; also citation in 19 Cyc. 641, for like rule under reinsurance contracts between insurance companies. Nor are we advised of any just reason to require payment or adjustment of damages suffered by the subvendee (as grower) in loss of crops prior to the suit against the original seller. The recovery therein must be measured by the actual loss due to the misrepresentation, to be established by proof through the grower and other witnesses. We are of opinion, therefore, that the ruling thereupon was not erroneous.

[6] 4. Assignments of error, however, for rejection of testimony offered on behalf of the defendant, raise questions of vital importance

for submission of the issues, if error is well assigned. The main assignment sets forth the offer as made, as follows:

"45. The court erred in refusing the offer of the defendant' (the plaintiff, by his counsel, stating in open court that he made no objection because such proposed testimony was presented in the form of an offer, and such offered testimony having been reduced to writing and filed in the cause and then and there brought to the court's attention before the jury retired) to prove by the witness John T. Buckbee, that at the time of the negotiations for and the making of the contract of October 23, 1903, covering the 3,500 pounds of cucumber seeds and other seeds, made at Janesville, Wis., that the samples of Westerfield Chicago Pickle cucumber seed were presented by him to Mr. Hohenadel; that a sample of the seed which Buckbee was then advertising in his catalogue of 1903 as Improved Chicago Pickling was presented; that this latter seed was the seed developed by Buckbee, defendant, from the seed earlier purchased by him from the Haskell Seed Company of Rockford, Ill., which was going out of business; that the price quoted to Mr. Hohenadel on the Westerfield Chicago Pickle cucumber seed was 85 cents per pound; that the price quoted on the other seed was 70 cents per pound; that the witness told to Mr. Hohenadel the history of the seed secured from Haskell and advertised by Buckbee as Improved Chicago Pickling; that his information was that it had been developed from the same original stock from which the Westerfield had been developed; that the witness described to Mr. Hohenadel the kind of cucumber that it would raise in the pickling stage, and described it as somewhat thicker and lighter shade than the Westerfield Chicago Pickle cucumber; that Mr. Hohenadel asked the witness what they called it; that the witness told him that they were advertising it as Improved Chicago Pickling cucumber seed; that the witness told him that they had grown this seed themselves, Buckbee growing the seed, and the quantity they had; that there was further conversation in regard to other seeds not involved in this suit but covered by the contract; that thereupon Mr. Hohenadel dictated and had written by his stenographer and typewriter the contract of October 23, 1903, in evidence; that, previous to dictating that, Mr. Hohenadel had stated that he would take 3,500 pounds of that seed; that they would label it in the contract 'Improved Chicago Pickling'; that that name was inserted in the contract by Mr. Hohenadel, and it was agreed between the witness and Mr. Hohenadel that the seed was developed from the seed purchased from the Haskell Seed Company, and should be delivered under the contract; that Mr. Hohenadel requested in the same conversation that 300 pounds covered by the contract of October 17, 1903, should be filled with the same kind of seed; that the 3,800 pounds of this kind of seed was afterwards, in the latter part of February or early part of March, shipped to the Hohenadel people under Hohenadel's direction, and invoiced to them as per invoices in evidence; that afterwards, and during the winter of the season following, for the purpose of testing this seed that was delivered in February or March to Hohenadel, the witness planted it in his greenhouse and tested it for germination and for quality; that, as shown by letter in evidence, Mr. Hohenadel was notified of this; that the seed that was germinated was of the variety delivered to Hohenadel; that after the plant grew, and the fruit was set and fully developed, samples of it were sent to Mr. Hohenadel previous to the delivery of the seed; that at that time, in 1903 and 1904, the witness knew of no other strain or variety or kind of cucumber seed that was advertised or being sold under the name of Improved Chicago Pickling. As a part of such offer, and identified by the same witness, page 27 of the Buckbee catalogue of 1903 was offered as defendant's Exhibit 2, and also page 27 of the Buckbee catalogue of 1904 was offered as Defendant's Exhibit 3, copies of which exhibits are set forth and included in the bill of exceptions in the action."

Understanding of the force of these offers requires reference to the following antecedent matters of record. The one contract in suit named the subject-matter thereof as "300 pounds cucumber Chicago Pickle," while the second contract named 3,500 pounds "cucumber

seed, Improved Chicago Pickling." On the part of the plaintiff, the contentions were (as stated in its brief), that one Westerfield had developed, long prior to the contracts, "a certain variety of cucumbers, which are especially desirable for pickling purposes," as described; that eventually "production of this type of cucumber resulted in the sale of cucumber seed, called indifferently, 'Westerfield Chicago Pickle,' or 'Chicago Pickle,' or 'Improved Chicago Pickling'"; and that both contracts intended such "Westerfield" variety as their subject-matter. Many seedmen, introduced as witnesses in support of such contention, so testified, although other witnesses upon the same side testified, in substance, either otherwise or that such other designations of the Westerfield variety were unknown to them in the trade. Numerous witnesses (seedmen) testified on the part of the defendant, in substance, that the contract terms were not understood in the trade as designations of the Westerfield variety. By way of foundation for the above offer, the witness Buckbee had been interrogated as to the negotiations and transactions between the parties on October 23d, when the second contract was made, and the record shows extended discussion, both on the part of court and counsel, upon the admissibility of testimony embraced in the subsequent offer. Thereupon the ruling of the court excluded the testimony, stating, "Whatever transpired prior to the execution of the written contract is absolutely immaterial," and, in substance, that it must be excluded as violative of the cardinal rule against varying the terms of the contract as written. For preservation of all questions raised by such rulings, the trial judge suggested the making of the offer and stated, "Let the record show that there is no objection made to the evidence because it is in the form of an offer," and counsel for plaintiff assented to such entry.

The foregoing immediate circumstances of the offer are material for two purposes: (a) As evidence that all substantial questions involved therein were duly presented and entered into consideration for the ruling to exclude the testimony; and (b) that it clearly meets the objection urged by counsel for plaintiff (elaborately discussed in the oral argument and supplemental briefs), in substance, that it raises no question of error in the exclusion, for the alleged reason that the offer embraces matter which was inadmissible in any view of the rejection of other matters contained therein, and is thus brought within the rule that rejection by the trial court as an entirety was authorized in the absence of segregation of matters so embraced therein. We believe the record is sufficient to present the important question upon the merits, whether the defendant was deprived of substantial rights by such exclusion.

In the enforcement of contracts which have been reduced to writing, either in formal instruments or in letters or memoranda adopted between the parties, one of the most frequent questions of difficulty arises out of tenders of proof of the nature described in the above offer. Issues are numerous in such cases, which both require and authorize proof of negotiations and attending circumstances out of which the contract grew, either for identification of subject-matter not sufficiently described in the writing, or for interpretation of con-

tract terms which are ambiguous or, uncertain without explanation of the sense in which they are employed in the contract. Thus, where the writing is "expressed in short and incomplete terms, parol evidence is admissible to explain that which is per se unintelligible, such explanation not being inconsistent with the written terms." 1 Greenleaf on Ev. § 282. For instances of the above-defined character the principle is well recognized, both in law and in equity, that the meaning the parties "intended to convey by the words they employed in the written instrument" may thus be ascertained and enforced. Id. This doctrine is entirely apart from and beyond the range of operation of the other elementary rule, which cannot be departed from in the enforcement of written contracts, that such contract between the parties cannot be varied or set aside by parol testimony, and that all prior negotiations and understanding of the parties (in the absence of fraud or mistake) are presumptively merged in the writing. It neither involves nor permits violation thereof when rightly understood and applied, each being consistent with the other in object and enforcement. In other words the rule invoked for the above-mentioned offer of testimony is exclusively applicable when ambiguity or uncertainty appears in the contract terms, and in such event parol proof is admissible for the sole purpose of ascertaining the meaning of terms so employed on which the minds of the parties presumptively met in making the contract. It thus serves the needful object of placing the court, "in regard to the surrounding circumstances, as nearly as possible in the situation of the party whose written language is to be interpreted." Id. § 295a.

So understood, application of this principle is free from difficulty whenever the controversy over the contract terms is strictly limited as above defined; but confusion is not infrequent, either in presentation of issues upon such terms or in the contentions of counsel in respect thereof, which tends to create difficulty in the way of placing offers of parol proof within one or the other of these cardinal rules, and we believe such confusion appears in the extended argument of counsel (and citations as well) in support of the ruling under consideration. We come, therefore, to the inquiry whether the issues upon the contract in suit render the rejected proof admissible.

Both pleadings and evidence concur in establishing. the fact, if otherwise questionable on reading the contracts or orders in suit, that the subject-matter of each—named "Chicago Pickle" in the one contract and "Improved Chicago Pickling" in the other—requires extrinsic evidence for identification as a known variety of cucumber seed, and the entire controversy between the parties hinges primarily on the meaning of these terms as employed in the respective orders. The plaintiff for support of its contention that both were used alike to designate "Westerfield Chicago Pickle"—an old and well-known variety "especially desirable for pickling purposes"—introduced (as heretofore mentioned) various seedmen who testified that the names were so used and known in the trade. This testimony was controverted, but, irrespective of such disagreement, we understand the alleged usage to constitute circumstantial evidence only of the meaning

of the uncertain terms employed in the writing; that, although uniform usage may have strong probative force in the issue of fact thus raised, other circumstances attending the making are equally admissible to ascertain the mutual intention of the parties therein. The foregoing offer of proof by the witness John T. Buckbee (who made the contract on behalf of the defendant for "Improved Chicago Pickling") clearly embraces full explanation to Hohenadel that the variety tendered for purchase was "Haskell" seed described with certainty; that he then quoted the "Westerfield" variety at 85 cents per pound, and the "Haskell" at 70 cents per pound, as optional for purchase; that Hohenadel selected the "Haskell" tender accordingly for purchase; that they then adopted, as designation for the seed so purchased, the arbitrary name "Improved Chicago Pickling," as theretofore applied by the defendant; that "the witness knew of no other strain or variety or kind of cucumber seed that was being sold under" such name; and that the name was so "inserted in the contract by Mr. Hohenadel."

We are of opinion that the testimony thus offered was admissible for submission upon the above-defined issue, and that error is well assigned for its rejection. In reference to objections urged to other matters embraced in the offer, we are not impressed with the alleged defects therein as substantive or requiring specific mention.

[7] Another ground of error in rejection of the offer of proof is discussed in the argument and requires consideration in reference to the issue of damages. The contention in substance is this: That not only in the above-recited features of the offer, but in the further offer to prove that the defendant subsequently produced cucumbers from the variety of seed contracted for, which were sent to Hohenadel "previous to the delivery of the seed" under the contract, such evidence was admissible to prove notice to the plaintiff of the actual nature of the seed to be delivered, that the party "damnified by the other party's breach" of the contract "is bound to use all reasonable means not to enhance his damages," and that proof of such notice would bar recovery of the special damages sought and awarded by the verdict. We believe these propositions (which were raised as well before the trial court) must be upheld for admissibility of the testimony so offered on that issue, irrespective of applicability of the offer for interpretation of the contract, and that the ruling was erroneous for that cause.

Other errors are assigned for rulings in rejection or reception of testimony, but none of these rulings impresses us to require specific mention. Those rejecting testimony in line with the above-mentioned offer are covered by the foregoing ruling of admissibility for interpretation of the contract, and the remaining objections are believed to be without substantial merit.

The judgment of the District Court is reversed accordingly, and the cause remanded, with direction to grant a new trial.