67 F.3d 305
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BIRCHWOOD OF LOS ANGELES, INC., a California corporation,
Plaintiff-Appellant-Cross-Appellee,
v.
INDOPCO, INC., dba National Starch and Chemical Company, a
Delaware corporation, Defendant-Appellee-Cross-Appellant.
 Nos. 94-35023, 94-35071.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1995.
Decided Sept. 27, 1995.
 
 Before: CANBY, REINHARDT, and KLEINFELD* Circuit Judges.
 MEMORANDUM**
 Birchwood of Los Angeles, Inc. ("Birchwood") brought an action against National Starch and Chemical Company ("National") for breach of warranty and fraud. Birchwood purchased adhesives and catalysts from National for the purpose of manufacturing wood veneer panels, which were ultimately used to make furniture and wall paneling. According to Birchwood, the aluminum chloride catalyst provided by National caused red and pink stains to appear on many of its veneer panels, including those which were used by Nike and Koll Construction ("Koll") for the Nike World Campus project.
 Although the district court allowed the jury to consider Birchwood's breach of warranty claim, it granted National's motion for a directed verdict on Birchwood's fraud claim following the close of testimony. In addition, the district court dismissed Birchwood's claim for damages allegedly sustained by Nike and Koll. The jury ultimately returned a verdict in favor of Birchwood on the breach of warranty claim in the amount of $578,847. Both sides appeal the district court's rulings. We reject National's contention that the district court erred in permitting the jury to consider the breach of warranty claim. Moreover, we agree with Birchwood that the court erred in granting a directed verdict on its fraud claim. We also vacate the district court's decision to dismiss Birchwood's claim for damages sustained by Nike and Koll.
 I. Fraud Claim
 Birchwood contests the district court's decision to grant National's motion for a directed verdict on the fraud claim. According to Birchwood, there was adequate evidence for the jury to conclude that National had committed fraud. We agree and vacate the directed verdict.
 Under California law the elements of actionable fraud are "1) misrepresentation (false representation, concealment, or nondisclosure); 2) knowledge of falsity (scienter); 3) intent to induce reliance; 4) justifiable reliance; and 5) resulting damages." Oken v. Morton, 203 Cal.App.3d 805, 828 (Cal.Ct.App.1988). Birchwood contends that National was aware of the fact that its aluminum chloride catalyst caused staining, that National deliberately concealed this knowledge from Birchwood, and that the suppression of this fact induced Birchwood to rely upon National's statements regarding the performance of its products.
 Birchwood presented adequate evidence to require the district court to submit the fraud claim to the jury.[1] In a letter dated January 23, 1987, National made representations regarding the "proven performance" of its products. There is ample evidence that National was aware of the staining problem when it made these representations. First, Birchwood introduced evidence that States Industries, one of National's customers, encountered problems with staining when using the aluminum chloride catalyst in 1983 and 1984. Second, a National employee investigating the streaking problem acknowledged that he was told by a scientist that the aluminum chloride catalyst was the source of the problem. Third, tests run by National's own chemist showed a correlation between the use of the aluminum chloride catalyst and the staining. Finally, a memorandum written in October 1985 by a National employee charged with investigating the staining problem stated:
 We know at this time that Tannens [sic] in wood readily oxidized in the presence of our catalysts and under heat and some pressure to [sic] form a red complex that results in a reddish hue on the surface of light-colored woods such as, alder, birch and cherry. Cherry is the worst case because of its high level of Tannens [sic] and light color. Cherry will even turn reddish slowly through photochemical oxidation of its Tannens [sic].[2]
 Together, this evidence would be sufficient to support a finding that National was aware of the cause of the staining problem at the time it made representations regarding its products' performance to Birchwood.
 The record also contains evidence tending to show that National deliberately concealed the fact that the aluminum chloride catalyst caused the staining in order to induce Birchwood to purchase its products. Birchwood produced a memorandum, dated March 13, 1989, in which a National employee wrote: "[i]t would be in National's interests to seek to develop a PVAc adhesive which is less susceptible to the type of staining we have experienced. (To the best of my knowledge, no one at Birchwood is aware of the staining problems we experienced at States Industries on cherry veneer.)." (emphasis added). In addition, a National employee testified that, when he asked his boss what would happen if Birchwood were informed of the staining problems encountered by States Industries, his boss had replied that "there was no reason [for National] to disclose this information to Birchwood" and that it was "none of their business." Another National employee confirmed that National did not disclose that two of its other customers had encountered staining problems. Birchwood's president testified that he had repeatedly asked a National employee whether or not National had encountered similar staining problems when working with other companies; the employee responded that Birchwood was the only manufacturer that had encountered this problem.[3]
 National argues that Birchwood knew of the hypothesis that the catalyst was the cause of the staining problem and, therefore, that Birchwood could not have relied on National's representations. In support of this argument, National points to a note dated June 21, 1988, scribbled by one of Birchwood's own employees, which stated that "Tanins [sic] in cherry, maple & others/OSU lab found tanins [sic] react w/aluminum & cause staining." This evidence is insufficient to support a directed verdict, but rather is for the jury to consider in determining the extent of Birchwood's knowledge. Birchwood is free to argue that the note demonstrates at most that one Birchwood employee knew that the aluminum chloride catalyst might be a cause of discoloration. As Birchwood points out, during the same period that the note was written, a National scientist told Birchwood that iron ions or the "long heat histories" could also be the source of the staining problem. Thus, the note by itself does not conclusively defeat Birchwood's claim that it justifiably relied on National's false representations regarding its product.
 Viewed in the light most favorable to the plaintiff, the evidence could support a conclusion that Birchwood had shown all the elements of fraud, including justifiable reliance on National's representations. The jury should have been permitted to determine the fraud claim. We therefore vacate the directed verdict and remand that claim for trial.
 II. Breach of Warranty Claim
 A. Motion for Directed Verdict
 National contests the district court's decision to deny its motion for a directed verdict on the breach of warranty claim. We affirm that decision for many of the reasons we have already given while explaining our vacation of the district court's ruling on the fraud claim. We need only discuss two additional matters here.
 As National points out, a plaintiff generally cannot establish breach of warranty if he knows that the product does not conform to the warranty but unreasonably continues to use it. Monsanto Co. v. Logisticon, 763 S.W.2d 371, 373 (Mo.App.1989); Pedroli v. Russell, 320 P.2d 873, 876 (Cal.Ct.App.1958). In this case, there is a factual dispute as to whether Birchwood was aware that the aluminum chloride catalyst did not conform to National's warranty and whether it behaved unreasonably. As noted above, at least one Birchwood employee suspected that the catalyst was the cause of the discoloration by June 1988. During this same period, however, National told Birchwood that its heating process and the excessive amounts of iron involved in its production process were possible causes. The jury could reasonably conclude that Birchwood did not know whether the catalyst was the cause of the staining problem during this period.
 National also points to evidence that, starting in March 1989, it recommended that Birchwood switch from the aluminum chloride catalyst to a citric acid catalyst to protect against discoloration. Birchwood nevertheless continued to use the aluminum chloride catalyst until January 1990. This evidence, while helpful to National, would not preclude a finding that Birchwood's conduct was reasonable. One of Birchwood's employees testified that the company did not use the citric acid suggested by National because "[w]e're a little tired of ... having test runs all the time, everything failing, and at this time we had very little problem." There is also evidence that National had not completed its lab work on the new catalyst as of November 1989. This evidence supports the conclusion that, despite National's contention, Birchwood reasonably declined to switch to the new product. The question of whether National was liable for breach of warranty was properly submitted to the jury.
 B. Jury Instructions
 National further argues that the district court erred in failing properly to instruct the jury regarding its theory of the case. We conclude that the instructions given were adequate.
 National requested that the district court submit the following instructions to the jury:
 One who seeks recovery for breach of warranty may not recover damages for injuries caused by using a product after the person learned of the defect or breach of warranty, unless you find that under the particular circumstances a person of ordinary prudence would have used the product despite knowledge of such defect or condition. Thus, it is for you to decide if Birchwood seeks damages for injuries that arose after Birchwood learned of the alleged discoloration, and if so, Birchwood cannot recover those damages.
 Although the jury instructions that were given do not precisely mirror those suggested by National and although National's may well have been preferable in some respects, we conclude that the district court did not err. The district court informed the jury that it could not award damages that Birchwood "could reasonably have prevented." If the jury had accepted National's contention that Birchwood behaved unreasonably in failing to switch catalysts, the instructions given would have required it to reject Birchwood's claim for damages arising after National suggested the switch. Obviously, the jury concluded that Birchwood's decision not to switch catalysts was reasonable. We also note that the last sentence of National's proposed instruction is not correct.[4] Therefore, any failure to frame the instruction in a manner that more closely resembled the instruction requested by National was harmless at worst and justified at best.
 C. Damages
 National also argues that Birchwood provided inadequate proof of the damages it sought. We conclude that Birchwood introduced sufficient evidence to permit the jury to assess damages without engaging in undue speculation or conjecture. See Harnsen v. Smith, 693 F.2d 932, 945 (9th Cir.1982), cert. denied, 464 U.S. 822 (1983). Although National makes much of the fact that few of those testifying about damages knew the precise number of panels that were stained, these witnesses provided reasonably specific estimates of the percentage of panels damaged and the approximate cost associated with that damage. Accordingly, we conclude that sufficient evidence supports the jury's calculation of damages.
 III. The Nike/Koll Claims
 The final issue is whether the district court erred in dismissing Birchwood's claims for damages sustained by Nike and Koll. We conclude that further factual development of this question is necessary and, accordingly, remand these claims for further proceedings.
 Nike hired Koll as its general contractor for the construction of the Nike World Campus, a $70 million dollar complex. Koll, in turn, hired Olsen as one of its subcontractors to install wood paneling in the building. At the request of Nike and Koll, Olsen purchased wood paneling from Birchwood for the Nike project. Birchwood contends that the discoloration of these panels resulted in several million dollars in damages to Nike and Koll, for which Birchwood is liable. It seeks to recover these damages from National.
 The first question is whether Birchwood has waived its right to pursue the Nike/Koll claims. National contends that the district court gave Birchwood numerous opportunities to present evidence that National was liable for the Nike/Koll damages, but that Birchwood was unable to produce this evidence. A review of the record belies National's contention. Before trial, the district court bifurcated the Nike/Koll claims. It did not allow the presentation of evidence regarding these claims at trial. While Birchwood's attorney was permitted to explain the type of argument he would make to the jury regarding the Nike/Koll damages, Birchwood was at no time permitted to produce evidence pertaining to these claims. At the close of the trial, the district court dismissed the Nike/Koll claims with prejudice, providing only a cursory explanation for its decision: "[t]here are several reasons [for the dismissal]. Some of them involve duties to mitigate damages. Some revolve around causation issues. Some involve remoteness issues."
 Unfortunately, the record is insufficient to permit us to determine whether any of the grounds relied upon by the district court warrant dismissal of the Nike/Koll claims, and we do not purport to resolve any of these issues here. We note, however, that Birchwood argues that National may be held accountable for the Nike/Koll damage claims because those claims represent consequential damages of National's breach of its express warranty. There appears to be some merit to its legal argument. Under the Uniform Commercial Code, a buyer can obtain consequential damages resulting from the seller's breach. UCC Sec. 2-715. These consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Id. A buyer may obtain damages from the seller for costs associated with the buyer's resale of the product to a sub-purchaser: "Where goods are sold with a warranty to a dealer, he may resell them with a similar warranty to a sub-purchaser. Accordingly, if this is done and the sub-purchaser recovers damages from the original buyer, the latter has a prima facie right to recover these damages against the seller who originally sold him the goods." Williston On Contracts, Sec. 1355, at 285. The buyer may obtain damages from the seller even when he has not yet paid his sub-purchaser (or sub-vendee) for those damages: "[E]ven though the original buyer has not yet been held liable to his sub-vendee, the amount of his probable liability may be recovered from the original seller." Id.; see also Buckbee v. Hohenadel, Jr., Company, 224 F. 14, 23 (7th Cir.1915); Wolstenholme, Incorporated v. Jos. Randall & Bro., Incorporated, 144 A. 909 (Pa.1929). The agreement between Birchwood, Koll, and Nike for prosecution of claims may bear on whether Birchwood may prosecute these claims. Upon remand, the district court may consider these legal principles as well as any other relevant law and facts the parties may offer.
 National argues that: (1) Birchwood cannot claim damages for the Nike/Koll project because it is currently in Chapter 11 bankruptcy proceedings and, for this reason, will not actually be forced to compensate Nike and Koll;[5] (2) Birchwood will be unable to show its probable liability to Nike and Koll due to the remoteness of these claims; (3) the speculative nature of Nike's and Koll's damages forecloses Birchwood's attempt to recover for the Nike/Koll damages; and (4) Birchwood's failure to mitigate damages would preclude it from recovering these damages from National.[6] In the absence of a more fully developed factual record, we are unwilling to speculate as to whether any of these circumstances would preclude Birchwood from recovering the Nike/Koll damages. We therefore vacate the dismissal of these claims and remand for further proceedings.
 IV. Conclusion
 We affirm the breach of warranty judgment. Birchwood introduced sufficient evidence to warrant submission of this claim to the jury, and the district court's instructions were adequate. We also conclude that there was adequate evidence to support the damages awarded on this claim to the jury. However, we vacate the directed verdict on Birchwood's fraud claim. Birchwood's introduced sufficient evidence of the elements of fraud to require submission of this claim to the jury. We also vacate and remand the district court's dismissal of Birchwood's claims for damages incurred by Nike and Koll. On the existing record, we cannot determine whether Birchwood will be able to establish probable liability to Nike and Koll.
 AFFIRMED in part, VACATED in part and REMANDED.
 
 
 
 *
 Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Kleinfeld was drawn as a replacement. Judge Kleinfeld was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because the district court granted a directed verdict to National on this claim, we view the evidence in the light most favorable to Birchwood. Glover v. BIC Corp., 6 F.3d 1318, 1325 (9th Cir.1993)
 
 
 [2]
 National contests this piece of evidence, stating that the author testified that the memorandum represented his own views, not those of the company. This argument, however, cannot justify the grant of a directed verdict. It is for the jury to decide the extent to which the company had knowledge of such matters. The contested evidence has some bearing on that point
 
 
 [3]
 National argues that States Industries' request for confidentiality prevented it from telling Birchwood about the staining problems that occurred there. However, a jury could reasonably conclude that, even if States Industries' request precluded National from informing Birchwood of the name of the company involved or the precise nature of its manufacturing operations, it could nevertheless have informed Birchwood that at least one company had encountered the same problem when using National's products
 
 
 [4]
 To the extent that the instructions proposed by National would prohibit liability for any damages arising after Birchwood learned of the discoloration, the proposed instruction is clearly improper. As National acknowledged in its brief and at oral argument, a buyer is prohibited from recovering on a breach of warranty claim only if he unreasonably used the product in the face of a known danger. The last sentence of the proposed instruction, however, would seem to preclude all damages arising after Birchwood knew of the discoloration problem, even if Birchwood did not know the cause of the discoloration and even if Birchwood's conduct was reasonable. This would clearly be improper, even under National's theory of liability
 
 
 [5]
 National cites no authority for this proposition. As in the case of the other grounds on which it relies, National may pursue its arguments further in the district court, by supplying it with the relevant legal authorities and, at the appropriate time in the proceedings, developing any facts necessary to support its assertion
 
 
 [6]
 National also contends that Birchwood would recoup its losses twice if the Nike/Koll claims are revived. This contention is incorrect. Birchwood did recover for damages that it sustained because of its provision of defective panels to Olsen--specifically, it recovered $23,760 arising from Olsen's failure to pay invoices from Birchwood. This award did not, however, include the damages sustained by Nike or Koll, most of which arise from the delay in construction of the Nike World Campus that was allegedly caused by the panel discoloration. Evidence of the Nike/Koll claims was not introduced at trial and did not serve as a basis for Birchwood's damage award. Nor did Birchwood obtain any damages for losses sustained by Olsen